UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN VAN ORDEN, et al.,            )
                                   )
            Plaintiffs,            )
                                   )
    vs.                            )        Case No. 4:09CV00971 AGF
                                   )
HAROLD MEYERS, et al.,             )
                                   )
            Defendants.            )

## MEMORANDUM AND ORDER

This case involves constitutional challenges by civilly-committed sex offenders to

the State of Missouri's treatment program and cost-reimbursement provisions.  The

named Plaintiffs are 14 individuals who are, or were, civilly-committed residents of the

Missouri Department of Mental Health's ("Department") Sexual Offender Rehabilitation

and Treatment Services ("SORTS") facility[1] at Southeast Missouri Mental Health Center

("SMMHC").  Defendants are 11 state officials responsible for various aspects of

SORTS, all sued in their official capacities.[2]  This matter is before the Court on Plaintiffs'

---

[1]     Formerly, the Missouri Sexual Offender Treatment Center ("MSOTC").

[2]     Defendants are Keith Schaefer, the Director of the Department; Mark Stringer, the Acting Director of Comprehensive Psychiatric Services at SORTS and SMMHC; Felix Vincenz, the Chief Operating Officer of the Division of Comprehensive Psychiatric Services at SORTS and SMMHC; Julie Inman, the former Chief Financial Officer at SORTS and SMMHC; Jay Englehart, the Medical Director at SORTS and SMMHC; Justin Arnett, the Chief Nurse Executive at SORTS and SMMHC; Melissa Ring, the Chief Operating Officer of SMMHC; Alan Blake, the Chief Operating Officer of SORTS; and Judy Sumpter and Harold Meyers, two reimbursement officers of the Department.

motion for class certification [Doc. No. 143] pursuant to Federal Rule of Civil Procedure 23. For the reasons set forth below, class certification will be granted.

## I.    BACKGROUND

In their Fourth Amended Complaint, Plaintiffs alleged numerous violations of the United States and Missouri Constitutions based on the lack of adequate treatment provided to them as SORTS residents. They also challenged the constitutionality of the Missouri statutory scheme that provides for reimbursement from Plaintiffs and/or their families or estates for the costs of Plaintiffs' care and treatment. Following the Court's ruling on Defendants' Motion to Dismiss [Doc. No. 192], the only claims remaining are Plaintiffs' claims (1) that their Fourteenth Amendment rights were violated due to the lack of adequate care and treatment, and (2) that Missouri's statutory reimbursement scheme as applied to Plaintiffs violates their rights to equal protection and substantive due process. [Doc. No. 192]

Plaintiffs, acting in behalf of current and future and certain past residents of SORTS, seek certification pursuant to Federal Rule of Civil Procedure 23 of two classes: the "Treatment Class" and the "Charging Class."

The "Treatment Class" includes persons who are or will be residents of SORTS of the State of Missouri as a result of civil commitment or who will be detained at SORTS pending civil commitment. The named Plaintiffs for the Treatment Class are John R. Van Orden, Michael D. McCord, Joseph Miller, Macon Baker, Chance Tyree, Walter W. Ritchey, Anthony Amonette, Richard Tyson, and Wade A. Turpin. The members of this class seek relief related to the treatment or lack of treatment provided to SORTS

residents.  Generally, Plaintiffs allege that the treatment provided during their confinement at SORTS is so grossly inadequate as to amount to a violation of their rights to substantive due process under the Fourteenth Amendment to the Constitution.

The "Charging Class" includes all current, former and future residents of SORTS, and their estates, heirs, assignees, descendants, and personal representatives, that have been or will be billed or charged for care, treatment, room or board by SORTS or by the SMMHC.  The Charging Class includes the same representative Plaintiffs as the Treatment Class with the addition of Plaintiff David Brown, a former resident.

A.  The SORTS Statutory Scheme

Missouri's Sexually Violent Predators Act ("SVPA") authorizes the civil commitment of "sexually violent predators," defined as persons who suffer from a mental abnormality that makes them more likely to engage in predatory acts of sexual violence if not confined in a secure facility.  Mo. Rev. Stat. §§ 632.480, et seq.  The SVPA applies to persons who have pled or been found guilty of a sexually violent offense, persons found not guilty of committing a sexually violent offense by reason of mental disease or defect, persons committed as criminal sexual psychopaths, and persons at any time convicted of a sexually violent offense who have committed a recent overt act.  *Id.* §§ 432.480(5)(a) and (b); 632.484.1(1) and (2).  Pursuant to the SVPA, an individual may be committed to the custody of the Department for an indefinite period of time, during which the State has an obligation to provide "care and treatment" designed to effect recovery.  *Id.* § 632.495 ("If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the director of the

department of mental health for control, care and treatment until such time as the person's mental abnormality has so changed that the person is safe to be at large."); *Id.* § 632.495; *Strutton v. Meade*, No. 4:05CV02022 ERW, 2010 WL 1253715, at *35 (E.D. Mo. March 31, 2010).

Under Missouri law, any "person receiving services" from the Department may be made liable for "the fees for services rendered to the person by a residential facility, day program or specialized service operated or funded by the department." Mo. Rev. Stat. § 630.205.1. The person receiving services is jointly and severally liable for those fees together with "the person's estate, spouse, parents, if the person is a minor, and any fiduciary or representative payee holding assets for the person or on the person's behalf." *Id*. The director of the Department is charged with determining "the maximum amount for services which shall be charged in each of the residential facilities . . . operated or funded by the department." *Id.* § 630.210.1. When the person who received services dies, "the total amount paid to the decedent or expended upon his behalf . . . shall be a debt due the state or county . . . from the estate of the decedent." *Id.* § 473.398. As a seventh class creditor, the State's debt is paid only after satisfying certain costs, such as funeral expenses, and other debts, such as taxes due to the United States, and after allowing for exempt property, such as the family and homestead allowances. The decision of the director to seek reimbursement for services rendered may be appealed to the Missouri circuit court, under the Missouri Administrative Procedures Act. *Id.* § 630.215.3. "The decision of the director in determining the amount to be charged for services to a patient," may be also reviewed in Missouri circuit court. *Id.* § 630.120. The

State of Missouri successfully collects reimbursement for services and room and board charges under this statutory authority.

B. Plaintiffs' Allegations with Respect to the Treatment Class

Plaintiffs allege that Defendants have refused to provide any meaningful statutorily-mandated "care and treatment."  Rather, according to Plaintiffs, SORTS treats residents with disdain and utilizes practices that are counter-therapeutic and that destroy any hope residents may have of reforming.  Plaintiffs allege that the care and treatment provided consists almost exclusively of sporadic and frequently-cancelled group meetings, attended by employees of SORTS, some of whom are unlicensed and untrained, at which residents discuss their problems.  Plaintiffs further allege that, since the inception of SORTS a decade ago, not a single resident has been released as a result of the treatment received at SORTS.

In essence, Plaintiffs assert that the treatment provided at SORTS fails to fulfill their statutory right to "care and treatment" and violates their constitutional right to a treatment that provides a realistic possibility of release.  Plaintiffs seek a declaration that the care and treatment provided by SORTS is constitutionally inadequate, and injunctive relief requiring the Department to improve the level of care and treatment provided in certain specific ways, such as by hiring trained psychologists and experts in the treatment of sex offenders.

C. Plaintiffs' Allegations with Respect to the Charging Class

Plaintiffs allege that at various times specific to each Plaintiff, one or more Defendants or their agents, demanded that he sign documents allowing the Department

and related entities to collect funds from his personal financial account to be paid to SMMHC for his "care and treatment," at the rate of $325 per day. They allege that two of the named Plaintiffs, Van Orden and Ritchey, already have received bills from the Department charging them $9,750 and $8,175 per month, respectively,[3] with balances continuing to mount. The Department undertakes these collection and reimbursement efforts pursuant to Missouri's statutory scheme that provides that any "person receiving services" from the Department may be made liable for "the fees for services rendered to the person by a residential facility," and that the person receiving services is jointly and severally liable for those fees together with his estate, spouse, and parents. Plaintiffs assert that this scheme violates their due process rights and that the inadequate care and treatment provided to them and to all others similarly situated renders the reimbursement scheme even more objectionable, as there is no consideration for the amounts that may be collected under the statute. Plaintiffs also assert that all SORTS residents are treated differently than other persons civilly committed for other mental health issues, in violation of their equal protection rights. Plaintiffs seek to enjoin Defendants from seeking to obtain reimbursement for the costs of Plaintiffs' care and treatment at SORTS.

D. Defendants' Arguments in Opposition to Class Certification

Several of the arguments Defendants raise in opposition to class certification are no longer pertinent, as they are directed at claims in Plaintiffs' Fourth Amended

---

[3] In their opposition memorandum, Defendants assert that they apply a "Standard Means Test" to determine the amounts owed by each resident, based on the individual's income and assets.

Complaint that have since been dismissed by the Court. [Doc. No. 192] As such, this Court will address only those objections directed to the remaining claims.

Defendants object to certification of both the Treatment Class and the Charging Class on the grounds that they are overly broad. Defendants contend that the Treatment Class is overly broad because it includes pretrial detainees, and that the Charging Class is overly broad because it includes former and future, as well as current SORTS residents and their estates, heirs, assignees, descendants, and personal representatives. With respect to the Treatment Class, Defendants also assert that because proposed class members committed to SORTS may suffer different "mental abnormalities," the proposed members of the Treatment Class lack the commonality and typicality necessary for class certification.

## II.    SCOPE OF THE CLASSES

### A.    "Future" SORTS Residents

The Court agrees with Defendants' assertion that both proposed classes are overly-broad and should not include "future" SORTS residents. Plaintiffs seek prospective injunctive relief which, if granted, would presumably apply to future SORTS residents. Therefore, the inclusion of "future" SORTS residents in the proposed classes is redundant and unnecessary, and could unduly complicate the proceedings. The Court will modify the proposed class definitions to restrict the classes to those who are, or will be *during the pendency of this action*, residents of SORTS.

B. <u>Non-SORTS Residents</u>

Plaintiffs propose that the Charging Class include the "estates, heirs, assignees, descendants, and personal representatives" of SORTS residents. The statutory scheme under which the Department may seek reimbursement for services makes these individuals jointly and severally liable with SORTS residents for those services. However, the inclusion of these individuals in the statute does not make it necessary to include them in the Charging Class. The prospective injunctive relief Plaintiffs seek would, if granted, address the issue of joint and several liability under the statutory scheme. Including these individuals in the proposed class would be unduly cumbersome and is not necessary to achieve the result Plaintiffs seek. Therefore, the Court will modify the proposed definition of the Charging Class to exclude the reference to "estates, heirs, assignees, descendants, and personal representatives."

C. <u>Pretrial Detainees</u>

The Court also agrees with Defendants' assertions that the inclusion of pretrial detainees within the proposed class destroys commonality. The Eighth Circuit has stated that "pretrial detainees are entitled to at least as much protection" as convicted offenders with respect to the provision of adequate medical treatment. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (stating, in the context of a claim for inadequate medical treatment, that the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to prisoners). However, the fact that pretrial detainees are entitled to at least as much protection does not mean that the programs offered to pretrial detainees are similar or that the objectives of those programs are

similar -- or should be similar -- to the programs offered to the civilly-committed residents.

Indeed, in this case certain factors readily distinguish pretrial detainees housed at SORTS from those SORTS residents who have been adjudicated "sexually violent predators" within the meaning of the statute. For example, pretrial detainees are not subject to indefinite confinement at SORTS, but are released upon a showing that they do not meet the definition of sexually violent predator. By contrast, SORTS residents who have been adjudicated sexually violent predators will not be released until they have received sufficient treatment to ensure that it is "safe for them to be at large." Regardless of the adequacy of the treatment available for them, pretrial detainees will be released from SORTS due to either an acquittal at trial or a conviction. The same is not true for persons deemed sexually violent predators. Assessing the adequacy of the treatment provided for pretrial detainees would involve different questions and considerations not relevant to civilly-committed SORTS residents. Accordingly, the Court concludes that pretrial detainees should be excluded from the proposed Treatment Class.

The Court shall analyze the propriety of class certification with the classes as narrowed herein.

## III.    STANDARD FOR CLASS CERTIFICATION

Plaintiffs move for class certification under Rule 23 of the Federal Rules of Civil Procedure. When considering a Rule 23 motion for class certification, a court must first determine if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of

the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The United States Supreme Court has long recognized that class litigation is an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) (quotation omitted). Plaintiffs bear the burden of establishing that the class should be certified and that each requirement of Rule 23 is satisfied. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). In addition, class certification is proper only if the court determines "after a rigorous analysis" that all the prerequisites of Rule 23 are met.[4] *Falcon,* 457 U.S. at 161; *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006).

In addition to the four prerequisites of Rule 23(a), the proposed class also must satisfy one of the subdivisions of Rule 23(b). Plaintiffs assert, and Defendants do not disagree, that Rule 23(b)(2) applies to the proposed classes. The Eighth Circuit has

---

[4] Even if all the requirements of Rule 23 are met, where the sole form of relief sought is equitable, and such relief, if granted, will benefit all members of the putative class, a court has limited discretion to deny class certification. *Ihrke v. Northern States Power Co.*, 459 F.2d 566, 572 (8th Cir. 1972) (vacated as moot, 93S.Ct. 66 (1972)); *Sutter v. Crawford,* No. 06-4032CV W FHS , 2007 WL 188451, at *1 (W.D., Mo. January 23, 2007) (denying class certification and finding the argument that injunctive relief would benefit all members of the proposed class more persuasive than the plaintiffs' failure to satisfy certain requirements of Rule 23(a)); *Women's Health Ctr. v. Webster*, 670 F. Supp. 845, 852 (E.D. Mo. 1987); *aff'd* 871 F.2d 1377 (8th Cir. 1989) (declining to certify class action where some, but not all, of the requirements of Rule 23 were met and the prospective equitable relief requested would benefit all members of the potential class); *but see Pottinger v. City of Miami,* 720 F. Supp. 955, 960 (S.D. Fla. 1989) (declining to exercise its limited discretion to deny certification where prospective equitable relief would arguably benefit all members of the prospective class).

expressed a preference for a liberal reading of Rule 23(b)(2) in the context of civil rights suits. *Coley v. Clinton,* 635 F.2d 1364, 1378 (8th Cir. 1980).

Finally, in addition to the requirements set forth above, considerations of comity apply to the class certification determination. The Eighth Circuit has held that courts reviewing motions for class certification in actions seeking injunctive relief against State agencies must be "'constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Elizabeth M.,* 458 F.3d at 784 (quoting *Rizzo v. Goode* 423 U.S. 362, 378 (1976)).

A. Numerosity

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable." To be "impracticable" does not mean that joinder must be impossible, but it does require a showing that it would be extremely difficult or inconvenient to join all members of the class." *Morgan v. United Parcel Service of America, Inc.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996). The Eighth Circuit has established no specific rule as to the necessary size of a class, but has directed courts to consider several factors in determining whether joinder is feasible: the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the class members. *Emanuel v. Marsh,* 828 F.2d 438, 444 (8th Cir. 1987) (citing *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982)).

Upon consideration of these factors, the Court concludes that each of the two proposed classes satisfies the numerosity requirement. At a minimum, the Treatment

Class would consist of approximately 150 members, the number of residents at SORTS at any one time. The Charging Class would be at least as large, potentially including past SORTS residents as well. It is clear that joining each of the putative plaintiffs individually and trying separate suits for each would be wasteful, duplicative, and time consuming. And, if each of the Plaintiffs' claims were tried individually, much of the evidence and many of the witnesses would be the same in each case, constituting a waste of judicial resources. Therefore, in this case joinder is "impracticable" and the numerosity requirement of Rule 23(a)(1) is satisfied.

B. <u>Commonality</u>

Commonality, as required by Rule 23(a)(2), will be found where the legal questions linking class members are substantially related to the resolution of the litigation. The mere presence of factual differences will not defeat the maintenance of a class action if there are common questions of law uniting the class members' claims. *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171,1174 (8th Cir. 1995); *Coley,* 635 F.2d at 1378; *Glen v. Fairway Indep. Mortg. Corp.*, 265 F.R.D. 474, 478 (E.D. Mo. 2010). As the Eighth Circuit held in *Paxton*, commonality "does not require that every question of law or fact be common to every member of the class … and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton,* 688 F.2d at 561 (quotation omitted). While Plaintiffs must show that there are questions of law or fact common to the class, they need not show that all issues raised by the dispute are common. *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir.

1974).  Furthermore, not every class member need be affected by a statute, administrative

practice, or institutional condition in an identical manner.  *Hassine v. Jeffes*, 846  F.2d

169, 177 (3d Cir. 1988) (reversing a denial of class certification where the district court

found that the named plaintiffs, inmates at a state prison challenging conditions of

confinement, were all subject to the same conditions even though they may not all have

suffered the same injuries).

Applying these standards to Plaintiffs' proposed classes, the Court finds that both

classes, as modified by the Court, satisfy the commonality requirement.  With respect to

the Treatment Class, the predominant fact issues include: the types of treatment provided

at SORTS; how often that treatment is available and to whom; the training and

qualifications of the treatment providers; what treatments, if any, have been shown to be

effective to permit sexually violent predators to safely return to society; the requirements

of the SORTS program; and what treatments facilitate progression through the levels of

the program toward release.  The predominate legal issue is whether the program

provided is so grossly inadequate as to shock the conscience.  With respect to these issues

the similarities between SORTS residents predominate over any differences that may

exist with respect to particular residents.  It is true that differences between class

members, such as length of confinement, progress shown under the existing treatment

regimen, and the willingness and cooperation evinced by particular SORTS residents may

exist and may affect the efficacy of the existing treatment regimen for a particular

individual.  But these differences are not relevant to the basic question raised by

Plaintiffs' constitutional claim: whether the treatment presently provided is so minimal as to shock the conscience.

Nor does the fact that SORTS residents may evince differing mental abnormalities destroy commonality. The adequacy of treatment when measured at the level of substantive due process does not hinge upon the underlying mental conditions of the named Plaintiffs and the proposed class members, or upon differences between them. "Defendants' actions in denying [Plaintiffs their] statutory right to treatment will be found unconstitutional under the Fourteenth Amendment if they were so arbitrary or egregious as to shock the conscience." *Strutton*, 2010 WL 1253715, at *35 (citing *Leamer v. Fauver*, 288 F.3d 532, 546-47 (3d Cir. 2002) (holding that a substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release")). The question is "how little treatment Defendants can provide before their behavior becomes conscience-shocking and therefore unconstitutional." *Strutton*, 2010 WL 1253715 at *36.

Commonality requires that "the harm complained of be common to the members of the class," not that each class member evince "precisely the same injuries." *Hassine*, 846 F.2d at 177. Here, the "harm complained of" is the failure of the Department to provide a level of care and treatment designed to effect recovery. In light of the applicable legal standard, this harm is common to all potential class members regardless of the nature of their underlying "mental abnormality."

14

The case with respect to the Charging Class is even more clear. Plaintiffs and the class members they seek to represent are all subject to the same statutory scheme which authorizes the Department to seek reimbursement from SORTS participants for services they allege to be inadequate or nonexistent.

Defendants contend that because the Department does not impose a flat fee for services, but applies a "means test" to determine the amounts charged, the named Plaintiffs and members of the proposed Charging Class lack the required commonality. The fact that class members are assessed differing amounts for services received will not destroy commonality. *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (holding that commonality is required as to the elements necessary to make out a prima facie case, but not for issues like damage calculations); *DeBoer*, 64 F.3d at 1174.

The Court also rejects Defendants' assertions that "former" resident of SORTS should be excluded from the proposed Charging Class. Defendants contend that the exclusion of former residents is proper because they will be unable to demonstrate that they share a common injury with the named Plaintiffs unless there has been a showing that the Department has, or will, seek reimbursement for services from former SORTS residents. This argument misses the point. Commonality between the named Plaintiffs and former SORTS residents arises from the fact that they are all subject to the same statutory scheme that authorizes the Department to seek reimbursement, whether or not it has chosen to do so in a particular instance. *DeBoer*, 64 F.3d at 1174.

C.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  The Eighth Circuit has said that the requirement of  "typicality" under Rule 23(a)(3) means that there are "other members of the class who have the same or similar grievances as the Plaintiff[s]." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977) (citations omitted).  The named Plaintiffs and the class members may be said to have similar grievances if they have been subjected to the same allegedly unlawful treatment.[5]  *Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995) (holding that the typicality requirement was satisfied where the named plaintiffs and the putative class members were subjected to the same policies and conditions and their claims were "all based on the same legal theories, the same arguments of unconstitutionality").

Here, the typicality requirement is satisfied with respect to the Treatment Class.  The named Plaintiffs and the putative class members allege that they have been and continue to be subjected to the same allegedly unlawful policies and conditions at SORTS.  *See Rentschler*, 160 F.R.D. at 116.  Further, the named Plaintiffs represent the various coded treatment classifications assigned as part of the SORTS program.  The allegations of inadequate treatment arise out of the same course of conduct and are based on the same legal theories.  *Id.*  The same is true of the Charging Class.  Both the named

_____

[5]     "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Thus, "a finding of commonality frequently supports a finding of typicality." *Von Colln v. County of Ventura*, 189 F.R.D. 583, 591 (C.D. Cal. 1999).

Plaintiffs and the absent class members are subject to the application of a statutory process which charges them for services they allegedly have not received, and are allegedly charged in a manner different from other civilly-committed mental health residents.  Accordingly, the Court concludes that the typicality requirement is satisfied.

    D.  Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  The adequacy requirement has two components: "(1) the class representatives' interests [must be] coextensive with and not antagonistic to those of the unnamed class members; and (2) the plaintiffs' counsel must be fully competent to prosecute the action as a class action." *Rentschler*, 160 F.R.D. at 116-17.

The first component, coextensiveness, "refers to shared objectives and shared legal and factual positions."  *Id*. at 117.  "Plaintiffs seeking to represent a class need not show that all class members agree with them."  *Hedge v. Lyng,* 689 F. Supp 884, 890 (D. Minn. 1987).  In the absence of "a real probability of a conflict which goes to the very subject matter of the litigation," antagonistic interests sufficient to defeat class certification will not be found.  *Rentschler*, 160 F.R.D. at 116-17*; see, e.g., Hedge,* 689 F. Supp. at  890 (holding that a "bald assertion" that some of the proposed class members might disagree with the plaintiffs was not sufficient to demonstrate antagonistic interests).  With respect to both the Treatment Class and the Charging Class, the Court concludes that the interests of the named Plaintiffs and the putative class members are sufficiently coincident to insure that Plaintiffs will vigorously assert the rights of the class.  *Id.* at 891.

In addition, the Court finds no indication that Plaintiffs' attorneys are anything other than "qualified, experienced and generally able to conduct the proposed litigation" as required by Rule 23 (a)(4). *Id.* at 890 *(quoting Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247(3d Cir. 1975)). The qualifications of Plaintiffs' attorneys as experienced and knowledgeable advocates are not in dispute and, therefore, the second component of the adequacy requirement is satisfied. *See Linquist v. Bowen,* 633 F. Supp. 846, 859-60 (W.D. Mo. 1986).

E. Rule 23(b)(2)

Once the four threshold requirements of Rule 23(a) are satisfied, a court must determine whether the suit is one of the types of class actions permitted under Rule 23(b). As noted above, the parties agree that the category applicable to the relief sought by each of the two proposed classes is Rule 23(b)(2). A class action is appropriate under Rule 23(b)(2), if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Treatment Class and the Charging Class are proper Rule 23(b)(2) classes. Defendants, SORTS administrators, established the policies and practices at SORTS and direct the treatment of SORTS residents and detainees. By implementing an allegedly unconstitutional program and by enforcing an allegedly unconstitutional reimbursement scheme, they "have acted or refused to act on grounds generally applicable to the class."

Fed. R. Civ. P. 23(b)(2).   Accordingly, class certification pursuant to Rule 23(b)(2) is appropriate.

F.  Comity

Mindful of the Eighth Circuit's cautionary language in *Elizabeth M. v. Montenez*, the Court has weighed the ramifications of certifying the proposed classes, and in particular the possibility that the exercise of its equitable powers might intrude upon the "State's administration of its own laws." *Elizabeth M.,* 458 F.3d at 784 (quotation omitted).  Upon careful consideration, the Court concludes that this case and these circumstances are distinguishable from those found in *Elizabeth M.*  In that case, the class action plaintiffs sought "sweeping injunctive relief" which, if granted, would have insinuated the district court in the minutiae of numerous detailed programs governing "nearly every facet" of the operations of three residential mental health facilities.  *Id*. Here, the Court confronts two basic issues: whether SORTS residents are deprived of meaningful treatment designed to effect recovery to a degree that offends the Fourteenth Amendment; and whether the Department may seek reimbursement for services that Plaintiffs allege were grossly inadequate, never provided, or provided in a manner that improperly differs from other civilly-committed residents.  The Court recognizes the possibility that even its consideration of these more focused issues has the potential to lead to inappropriate involvement in the day-to-day operations of SORTS, but believes such concerns can be addressed at a later stage of these proceedings if they prove to be problematic.

The Eighth Circuit has recognized that "a court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and 'limited.'" *In re Zurn Pex Plumbing Prod. Liability Litigation*, 644 F.3d 604, 613 (8th Cir. 2011) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11(1978)). In light of this uncertainty and the Court's determination to avoid inappropriate involvement in the State's concerns, the Court will certify these classes, but reserve the right to decertify or redefine them at the close of discovery when the factual basis for Plaintiffs' claims is more fully developed. This course of action gives due recognition to the fact that class certification decisions are "necessarily prospective and subject to change," as they are generally made before the close of discovery. *In re Zurn*, 644 F.3d at 614.

## IV.    NOTICE TO THE CLASSES

Although Rule 23 does not mandate notice requirements when a class is certified under Rule 23(b)(2), courts have exercised their discretion under Rule 23(c)(2)(A) to require notice. *See e.g., Jones v. Nova Star Fin., Inc.,* 257 F .R. D. 181, 194 (W.D. Mo. 2009) (finding discretionary notice to class members in a 23(b)(1) action appropriate). In determining whether to require notice when notice is discretionary, courts have considered the interests of class members to be notified and whether notice costs would "deter the pursuit of class relief." *Id.* The parties have not provided the Court with a proposed form of notice. Accordingly, the Court will direct the parties to succinctly brief the notice issue to assist the Court in its notice determination.

## CONCLUSION

Based on the foregoing analysis, the Court concludes that Plaintiffs' motion for class certification should be granted, certifying a "Treatment Class" and a "Charging Class." The "Treatment Class" shall include persons who are, or will be, during the pendency of this action, residents of SORTS of the State of Missouri as a result of civil commitment. The "Charging Class" shall include all persons who are, or will be, during the pendency of this action residents, and former residents, of SORTS of the State of Missouri as a result of civil commitment, and who have been, or will be, billed or charged for care, treatment, room or board by SORTS or by the SMMHC.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Class Certification [Doc. No. 143] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs shall file no later than **October 12, 2011**, their brief in support of their proposed form of notice, and Defendants shall file their response to Plaintiffs' brief not later than **October 24, 2011**.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2011.