UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN VAN ORDEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:09CV00971 AGF |
| ) | |
| KEITH SCHAFER, et al., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 351) for partial summary judgment filed by Defendants Keith Schafer, Rick Gowdy, Joseph Parks, Robert Reitz, Melissa Ring, Julie Inman, Linda Moll, Harold Meyers, Judy Sumpter, Daman Longworth, Alan Blake, Jay Englehart, Mark Stringer, Donna Augustine, Dave Schmitt, Justin Arnett, Marty Martin-Forman, Ian Fluger, Sherry Lee, Ericka L. Kempker, and Kristina Bender-Crice (collectively, "Defendants"). Plaintiffs in this class action are civilly committed residents of Missouri's Sex Offender Rehabilitation and Treatment Services ("SORTS") facilities. They assert claims against Defendants in their official capacities as current or former employees of the Missouri Department of Mental Health ("DMH"). Plaintiffs challenge the care and treatment they received at SORTS and the reimbursement sought for that treatment. Defendants seek summary judgment solely on Plaintiffs' claims regarding reimbursement. For the reasons set forth below, Defendants' motion shall be granted in part and denied in part.

## BACKGROUND

This class action raises claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., challenging (1) the care and treatment, or lack thereof, provided to individuals civilly committed to SORTS after being declared sexually violent predators ("SVPs") under Missouri's SVP statute, Mo. Rev. Stat. § 632.480 et seq.; and (2) Missouri's statutory scheme requiring reimbursement from SORTS residents, or their families or estates, for the cost of their allegedly inadequate care and treatment, Mo. Rev. Stat. §§ 630.205-630.220; 473.398-473.399. Defendants seek summary judgment solely on the latter claims, regarding reimbursement.

Plaintiffs challenge the reimbursement scheme on substantive due process and equal protection grounds. They seek to have the reimbursement statutes declared unconstitutional as applied, to enjoin Defendants from seeking reimbursement from Plaintiffs, and to have any property seized by Defendants under the reimbursement statutes returned to Plaintiffs or their estates.

In support of their substantive due process claim, Plaintiffs argue that Defendants violated their fundamental rights by taking or threatening to take money from them for care and treatment that was withheld, inadequately provided, and/or punitive in nature. As evidence of their allegations of constitutionally deficient treatment, Plaintiffs point to correspondence among DMH employees, including some of the Defendants, expressing serious concerns regarding overcrowding, understaffing, underfunding, and low or non-existent "graduation" rates at SORTS. *See* Doc. No. 370-1. Defendants dispute this evidence and offer affidavits of DMH employees testifying as to the adequacy of treatment at SORTS.

In support of their equal protection claim, Plaintiffs argue that Defendants treat SORTS residents differently than other civilly-committed residents by charging SORTS residents higher fees for inferior treatment, without any rational basis for such differences.

The evidence of record, including the deposition of Brent McGinty, the DMH's former Deputy Director of Administration, establishes that, at all relevant times, the DMH has employed a uniform process for calculating the amount of money sought from civilly committed residents, regardless of whether they were committed to SORTS or other facilities. The DMH first calculates a per diem rate for each facility. The per diem rate takes into account the facility's total expenditures, including centralized overhead costs and facility-specific costs for services such as "psychiatric treatment" and rehabilitation. *See* Doc. Nos. 353 at 2-3 & 353-1 at 18-22. For fiscal year 2012, the per diem rate for the Southeast Missouri Mental Health Center, of which SORTS is a part, was $506 per day. (Doc. No. 353-1 at 20.) The DMH then adds to the per diem rate any individualized costs associated with the resident being charged, such as the cost of the resident's medicine or laboratory work. *Id.* at 28.

The DMH does not seek reimbursement from residents who do not have the ability to pay. The DMH determines ability to pay using a Standard Means Test Financial Questionnaire.[1] From the time SORTS opened in 1999 until October 2012, the DMH

---

[1] Prior to the fall of 2011, the DMH required income verifications from residents, but now, DMH reimbursement officers take a resident's word that he has zero ability to pay unless the officers have reason to doubt the resident. Reimbursement officers also used to treat residents who refused to complete a Standard Means Test Financial Questionnaire as fully able to pay, but the DMH now treats these residents as having zero ability to pay.

collected a total of $113,100.08 from SORTS residents under the reimbursement statutes. It is unclear how much money has been collected since 2012.[2]

Defendants argue that summary judgment is warranted on Plaintiffs' substantive due process claim regarding reimbursement because Plaintiffs cannot show that their fundamental rights have been violated or that Defendants' conduct was shocking to the contemporary conscience. Defendants assert that "[s]ince Plaintiffs are receiving both psychiatric and residential services from DMH, DMH is authorized by law to seek reimbursement." (Doc. No. 352 at 11.) Defendants argue that the adequacy of Plaintiffs' care and treatment is "a separate question under the complaint." *Id.* at 10. In any event, Defendants argue, Plaintiffs present no evidence that the treatment they receive is conscience shocking or disproportionate to the need presented.

Defendants also argue that summary judgment is warranted on Plaintiffs' equal protection claim regarding reimbursement because Plaintiffs have not shown that Defendants treat SORTS residents differently than other civilly committed residents. Defendants contend that Plaintiffs fail to offer any evidence that Defendants charge lower fees to non-SORTS residents or treat non-SORTS residents better than SORTS residents.

---

[2] McGinty's successor, Daniel Haug, submitted affidavits regarding the amount of money collected from SORTS residents from 2012 to the present. Haug's initial affidavit, submitted in connection with Defendants' opening summary judgment brief, stated that the DMH collected an additional $143,980.98 from SORTS residents, such that the total amount of money collected from SORTS residents from the facility's opening in 1999 until the present would be $257,081.76. (Doc. Nos. 353-3 at 2 & 370 at 7.) However, in a second affidavit attached to Defendants' reply brief, Haug states that "an error was found" in his previous calculation, and "the actual amount collected from SORTS residents for their cost for care since the program began to present is $130,866.00." (Doc. No. 374-3 at 2.)

Finally, Defendants argue that they are entitled to qualified immunity on both claims because Plaintiffs cannot show that, in seeking reimbursement, Defendants violated a clearly established constitutional right of which a reasonable person would have known.

Plaintiffs argue that Defendants should be denied summary judgment because there are material factual disputes as to the nature of the care and treatment provided to SORTS residents, and as to the differences in treatment of and reimbursement sought from SORTS residents as compared to other civilly committed residents.

Plaintiffs also argue that qualified immunity does not apply to Plaintiffs' claims, which are asserted against Defendants solely in their official capacities and solely for injunctive and declaratory relief.

## **DISCUSSION**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted). "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe v. Cnty. of St. Louis, Mo.*, 690 F.3d 1004, 1011 (8th Cir. 2012) (citation omitted).

As an initial matter, the Court rejects Defendants' request for qualified immunity. As the Court has now repeatedly held in this case, qualified immunity does not apply to governmental employees sued solely in their official capacities and solely for equitable

relief, as here. *See VanHorn v. Oelschlager*, 502 F.3d 775, 777-79 (8th Cir. 2007); *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994) ("There is no dispute that qualified immunity does not apply to claims for equitable relief, and that state officials may be sued in their official capacity for equitable relief.") (citations omitted); *Hopkins v. Saunders*, 199 F.3d 968, 977 (8th Cir. 1999) (holding that a monetary award may be deemed an equitable remedy if the award is "restitutionary in nature" or "incidental to or intertwined with injunctive relief").

The Court also disagrees with Defendants that Plaintiffs' care and treatment allegations are "separate" from their claims challenging reimbursement. To the contrary, Plaintiffs' substantive due process claim regarding reimbursement encompasses, and is entirely dependent on, their care and treatment allegations. That is, Plaintiffs argue that Defendants violated their substantive due process rights by seeking reimbursement for constitutionally deficient care and treatment.

Substantive due process "protects individuals against two types of government action": action that "shocks the conscience," and action that "interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted); *see also Strutton v. Meade*, 668 F.3d 549, 557-58 (8th Cir. 2012) (holding that although there is no "fundamental due process right to sex offender treatment," substantive due process requires courts to consider "whether the state action . . . was so arbitrary or egregious as to shock the conscience"). Plaintiffs argue that not only is the allegedly inadequate and/or punitive treatment of SORTS residents conscience shocking, but so is the fact that Defendants charge SORTS residents, if they are able to pay, more than $506 per day for such treatment. Although Defendants dispute the nature and level of

treatment provided, this dispute only evidences a genuine issue of material fact as to whether the care and treatment provided to SORTS residents is so arbitrary or egregious as to shock the conscience. If so, then the fact that Defendants ask SORTS residents to pay hundreds of dollars a day for such treatment may also shock the conscience.

Thus, unresolved factual questions regarding the nature and level of treatment provided at SORTS preclude summary judgment on Plaintiffs' substantive due process claims regarding both care and treatment and reimbursement. *See Strutton v. Meade*, No. 4:05CV02022 ERW, 2008 WL 4534015, at \*20 (E.D. Mo. Sept. 30, 2008) (denying summary judgment on civilly committed sex offender's substantive due process claims regarding failure to provide adequate treatment where factual questions remained as to whether contested actions were conscience shocking); *Karsjens v. Jesson*, No. CIV. 11-3659 DWF, 2015 WL 420013, at \*9-10, 12-13 (D. Minn. Feb. 2, 2015) (same).

But the Court reaches a different conclusion with respect to Plaintiffs' equal protection claim. "In general, the Equal Protection Clause requires that state actors treat similarly situated people alike." *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000). Plaintiffs base their equal protection claim on allegations that Defendants treat SORTS residents differently than other civilly committed residents by charging SORTS residents higher fees and providing SORTS residents inferior treatment in exchange for those fees.

However, Plaintiffs have not offered any evidence in support of their allegations of differences in fees or treatment. It is undisputed that the DMH calculates the amount of reimbursement sought from SORTS residents the same way it does for non-SORTS residents.

And Plaintiffs have not offered any evidence of the nature or level of treatment of non-SORTS residents. Plaintiffs' evidence relates only to the care and treatment of SORTS residents. This evidence may support Plaintiffs' substantive due process claim regarding reimbursement sought for inadequate treatment. But it does not support Plaintiffs' equal protection claim because it says nothing about whether non-SORTS residents from whom reimbursement was sought received adequate treatment. Because Plaintiffs have not come forward with evidence showing a genuine issue for trial regarding their equal protection claim, the Court will grant Defendants summary judgment on that claim.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiffs' equal protection claim regarding the reimbursement statutes, and **DENIED** with respect to Plaintiffs' substantive due process claim regarding the reimbursement statutes. (Doc. No. 351.)

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 20th day of March, 2015.