UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN VAN ORDEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:09CV00971 AGF |
| ) | |
| KEITH SCHAFER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion (Doc. No. 382) to exclude the reports and testimony of Plaintiffs' expert witnesses, David Prescott and Brian Abbott, from the bench trial in this case. For the reasons set forth below, the motion shall be granted in part and denied in part.

## BACKGROUND

Plaintiffs in this class action are civilly committed residents of the Missouri Department of Mental Health's ("DMH's") Sex Offender Rehabilitation and Treatment Services ("SORTS") facilities, who have been declared sexually violent predators ("SVPs") under Missouri's SVP statute, Mo. Rev. Stat. § 632.480 et seq. Plaintiffs assert claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., challenging the care and treatment provided to SORTS residents, and the reimbursement sought by the state for that treatment.

One of Plaintiffs' experts, David Prescott, is a licensed clinical social worker. He serves as the Director of Professional Development and Quality Improvement for Becket

Family of Services, which operates a range of inpatient and outpatient programs, including treatment of individuals who have been sexually abused. He previously served as the Clinical Director of the Minnesota Sex Offender Program in Moose Lake, Minnesota and as the Treatment Assessment Director for Wisconsin's Sand Ridge Secure Treatment Center, both of which are SVP civil commitment programs like SORTS. Prescott has also served as a consultant and trainer for other state SVP civil commitment programs. He conducted a training of clinicians at the SORTS facility in Farmington, Missouri in 2014.

In his expert report, Prescott provides the following opinions:

**Opinion 1:** SORTS, as presently constituted, is not structured in such a manner to provide effective and comprehensive mental health treatment necessary to result in conditional or full releases for any covered residents.

**Opinion 2:** The standards for release of SORTS residents are vague, unrealistic and unachievable, and further not supported by mental health professional standards.

**Opinion 3:** SORTS does not make use of or employ the least restrictive alternative for its residents.

(Doc. No. 383-1.)

Plaintiffs' other expert, Brian Abbott, is a licensed clinical psychologist and clinical social worker. He has worked as a clinician, forensic evaluator, author, and trainer in the area of child sexual abuse. He has treated or supervised the treatment of hundreds of sex offenders, and he has testified in SVP civil commitment proceedings around the country, including in Missouri.

In his expert report, Abbott provides the following opinions: (1) SVP civil commitment programs represent flawed public policy in general; (2) the standards for release at SORTS are unrealistic and/or unachievable; (3) SORTS does not have an effective

treatment program because it appears that SORTS does not allow releases to less restrictive alternatives, SORTS appears to be underfunded, residents appear to be receiving less than the amount of treatment time provided at other sex offender treatment programs, and the lack of releases at SORTS likely instills a sense of hopelessness in SORTS residents, which is counter-therapeutic; (4) the SORTS conditional release program is unrealistic, unworkable, and disingenuous because, for example, conditionally released residents do not appear to be permitted to spend meaningful time outside of the SORTS facilities, and it appears that residents the DMH identified as being eligible for conditional release were not informed of this fact and were not afforded an opportunity for conditional release; (5) SORTS lacks a least restrictive alternative; and (6) Missouri's SVP civil commitment procedures in general appear to be biased toward promoting commitment. (Doc. No. 383-4.)

Neither Prescott nor Abbott interviewed any of the residents or staff at SORTS. Instead, they based their opinions on a review of discovery in this case and their training, education, and experience with other SVP civil commitment programs around the country. The discovery reviewed by both experts includes emails and correspondence among DMH employees expressing concerns regarding overcrowding, understaffing, underfunding, and low or non-existent "graduation" rates at SORTS; treatment materials from a one-time treatment director at SORTS, Dr. Mark Carich; other documents and interrogatory responses produced by Defendants; and transcripts of depositions conducted in this case.

Defendants do not challenge the qualifications of Prescott or Abbott; rather, they argue that the expert reports and accompanying testimony are not based on sufficient facts

or data, are unhelpful, and do not reliably apply the principles and methods to the facts of the case. Defendants argue that the experts' opinions are inadmissible because they are based on "outdated" emails and documents. Defendants note that the experts did not interview any residents or staff at SORTS, did not discuss standards of release with anyone at SORTS, do not know whether the treatment materials they reviewed were ever implemented at SORTS, and do not know what treatment methods are currently being used at SORTS.

Defendants also argue that Abbott's opinions regarding the SVP civil commitment process generally, including that it represents flawed public policy and appears biased toward commitment, are irrelevant to the issues in this case, which are limited to the constitutionality of the care and treatment provided to SORTS residents and the reimbursement sought for that treatment.

Plaintiffs respond that Defendants' challenges regarding the factual bases of the expert testimony go to the weight of the testimony, not its admissibility. Plaintiffs argue that the experts' extensive experience with SVP civil commitment programs around the country, and their review of the extensive discovery in this case, provide a sufficient basis for their opinions and will help the Court resolve the issues in this case. Plaintiffs note that Defendants will be free at trial to challenge the data upon which the experts relied, and to present their own experts' opinions.

Plaintiffs also argue that Abbott's opinions regarding Missouri's SVP civil commitment process generally are relevant to Plaintiffs' claims that the care and treatment at SORTS is unconstitutional and, alternatively, a violation of the ADA. Plaintiffs note that

Abbott's opinions discuss the psychological evaluations performed by certified forensic experts during the civil commitment process, and the fact that some SORTS residents were committed despite an evaluation that they did not suffer from a mental abnormality and/or did not meet the risk threshold set forth in the SVP statute. Plaintiffs argue that these evaluations are relevant to their care and treatment claims because the evaluations should have, but have not, been considered in formulating the treatment provided to, and standards for release of, the respective SORTS residents. In other words, Plaintiffs argue that Abbott's opinions regarding the continued commitment of SORTS residents who were at one time found to not suffer from a mental abnormality that makes them sexually dangerous help demonstrate that SORTS program, as applied in these instances, is unlawful.

## **DISCUSSION**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), which charged trial judges with a "gatekeeping" role to exclude unhelpful and unreliable expert testimony.

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *First Union Nat. Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Id.* And any "doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark By & Through Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (citations omitted).

Moreover, because "[t]he main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony," *Daubert* standards are relaxed in bench trials, where there is no jury and the trial court is the fact finder. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011); *Tussey v. ABB, Inc.*, 746 F.3d 327, 337 (8th Cir. 2014) ("In a bench trial, we not only give the trial court wide latitude in determining whether an expert's testimony is reliable, we also relax *Daubert*'s application.") (internal citations omitted); *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (holding that *Daubert*'s application is relaxed for bench trials because "there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself") (citation omitted).

In this bench trial, the Court finds that the expert reports and testimony of Prescott and Abbott are admissible except in one narrow respect, discussed below. The Court agrees with Plaintiffs that the factual bases of the expert opinions are matters of credibility, not admissibility. Any weaknesses perceived by Defendants in the factual bases of the expert opinions may be explored on cross examination. *See Garrett v. Albright*, No. 06-CV-0785, 2008 WL 795610, at *2 (W.D. Mo. Mar. 21, 2008) (rejecting the defendants' attack on factual basis of expert's conclusion, including "what records he may or may not have reviewed, whether he should have made calls to . . . other hospitals or whether one interview was sufficient," and holding that these matters went to credibility, not admissibility); *Kay v. Lamar Adver. of S. Dakota, Inc*., No. CIV. 07-5091-KES, 2009 WL 2606234, at *3 (D.S.D. Aug. 21, 2009) ("Defendants argue that Dr. Lierman could have obtained additional facts by interviewing some of the officers of ARXX. The fact that Dr. Lierman may have obtained additional data does not demonstrate that Dr. Lierman relied on insufficient facts.").

The Court will, however, exclude Abbott's opinions that SVP civil commitment programs represent flawed public policy in general, and that Missouri's SVP civil commitment procedures appear to be biased toward promoting commitment. As Defendants correctly note, Plaintiffs do not challenge Missouri's ability to civilly commit SVPs. Therefore, Abbott's opinions regarding whether the civil commitment of SVPs is bad policy or Missouri's procedures are biased are unhelpful and irrelevant. The Court will grant Defendants' motion to exclude these two opinions. However, this ruling should not be read to prohibit Plaintiffs from introducing the factual information upon which Abbott may have relied, such as the nature of the psychological evaluations conducted during the civil

commitment process, to the extent Abbott contends these evaluations should impact treatment and standards of release at SORTS.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion to exclude the testimony and reports of David Prescott and Brian Abbott is **GRANTED in part** and **DENIED in part**. (Doc. No. 382.) The motion is **GRANTED** with respect to Abbott's opinions that the SVP civil commitment process is flawed public policy and biased in favor of commitment. The motion is **DENIED** in all other respects.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 20th day of March, 2015.