UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN VAN ORDEN, et. al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:09-cv-00971-AGF |
| | ) |
| KEITH SCHAFER, et. al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' SUPPLEMENTAL BRIEFING**
**ON *KARSJENS V. JESSON***

District Judge Donovan Frank found the Minnesota Sex Offender Program (MSOP) unconstitutional. *Karsjens v. Jesson*, No. CIV. 11-3659 DWF/JJK, 2015 WL 3755870, at *1 (D. Minn. June 17, 2015). Warning that any such program must be critically examined, lest it be "used by the state to segregate undesirables from society," the court found Minnesota's program to be unconstitutional both on its face and as applied. *Id.*, at *1, *32.

The factual findings underlying the decision in *Karsjens* are remarkably similar to the evidence presented at trial in this case, including "pervasive hopelessness"; a feeling that "the only way out is to die"; failure of staff to apply the constitutional standard for release; early misrepresentations that residents would be released after approximately thirty-two months; and, most importantly, the fact that "no committed individual has ever been fully discharged from MSOP" -- not even those no longer meeting the criteria for commitment. In light of this evidence, the court "conclude[d] that the Constitution requires that substantial changes be made to Minnesota's sex offender civil commitment scheme." *Id.*, at *35. Because the flaws in MSOP that caused the court

1

to conclude MSOP is unconstitutional are also present in Missouri's scheme, this Court should treat the decision in *Karsjens* as persuasive authority supporting the conclusion that SORTS is at loggerheads with the Due Process Clause of the federal constitution and with our notions of ordered liberty.[1]

Minnesota's program is similar to Missouri's. Under the Minnesota Civil Commitment and Treatment Act ("MCTA") of 1994, persons are civilly committed following the full completion of their criminal sentences, where they are found by a court to have engaged in a past course of harmful sexual conduct, manifested by a mental disorder or dysfunction which renders the person likely to engage in acts of harmful sexual conduct. *Id.*, at *5. Residents are confined at secure facilities unless they can show there is a less restrictive placement that will address their treatment needs. *Id*. The Department of Human Services ("DHS") is required by statute to provide care and treatment to MSOP residents, who, under Minnesota Supreme Court case law, may be confined only until they are no longer dangerous *or* no longer suffer from a mental condition requiring treatment. *Id*. at *25 (citing *Call v. Gomez*, 535 N.W.2d 312, 319 (Minn. 1995)).

A. Strict Scrutiny Applies.

In evaluating MSOP's constitutionality, the court applied strict scrutiny. Acknowledging that "substantive due process protects individuals against two types of

---

[1] The conclusions in *Karsjens* have already been ratified by the Minnesota Chapter of the Association for the Treatment of Sexual Abusers ("ATSA"). Immediately following the issuance of the decision, the ATSA issued a Position Statement, which reads in part, "We find the Federal Court's ruling by Judge Donovan Frank to be fair and necessary to correct what has become a broken system of sexual offender civil commitment in Minnesota." The full statement can be found at https://mnatsa.org/wp-content/uploads/2015/06/MnATSAPositionStatementFederalRulingMSOP. In the instant case, Defendants' expert, Dr. Stanislaus, testified that SORTS relied on ATSA guidelines.

government action: action that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty,'" the court rejected a shocks-the-conscience standard because "[c]ontrary to Defendants' assertions, the Court concludes that the 'shocks the conscience' standard does not apply to Plaintiffs' facial and as-applied challenges because Plaintiffs' substantive due process claims involve the infringement of a fundamental right." *Id*., at *32. Reasoning that liberty is a fundamental right, and that civil commitment is a "massive curtailment of liberty," the court held, "When a fundamental right is involved, courts must subject the law to strict scrutiny, placing the burden on the state to show that the law is narrowly tailored to serve a compelling state interest." *Id.*, at *26. While acknowledging that detention of the "truly dangerous" is justified to safeguard the public, the court emphasized, "[O]ur constitutional preservation of liberty requires that we carefully scrutinize any such deprivation of an individual's freedom to ensure that the civil commitment process is narrowly tailored so that detention is *absolutely limited* to a period of time necessary to achieve these narrow governmental objectives." *Id*., at *2. (emphasis added.) Strict scrutiny is appropriate because "Plaintiffs' case has never been about the immediate release of any single committed individual or committed individuals," but instead "raise[s] a systemic challenge." *Id.*, at *2, *27.[2]

B. Application of *Hendricks*.

The court also gave considerable attention to *Kansas v. Hendricks*, 521 U.S. 346 (1997). Cautioning that "civil commitment might improperly be used to indefinitely extend the prison terms of individuals who have been criminally convicted of a crime and

---

[2] The Plaintiff Class in this case has maintained that this case is distinguishable from *Strutton v. Meade* because theirs is a systemic challenge and not a claim by a single plaintiff.

3

who have finished serving their defined terms of imprisonment," the court explained that "'[i]f the civil system is used simply to impose punishment after the State makes an improvident plea bargain on the criminal side, then it is not performing its proper function.'" *Karsjens*, 2015 WL 3755870, at *1 (quoting *Hendricks,* 521 U.S. at 373 (Kennedy, J., concurring)).

While recognizing the precedential value of *Hendricks*, the court distinguished *Hendricks* from *Karsjens*, explaining that while *Hendricks* concerned only the "*potentially* indefinite commitment" of the mentally ill or dangerous, the case before it concerned the *actual* indefinite commitment of a class of plaintiffs, evidenced by the fact that no one had been released. *Id*., at *26 ("This case is distinguishable from other challenges to the involuntary confinement of sex offenders where it was represented to the court that the program's anticipated duration of completion was a few years or only *potentially* indefinite; here, not one offender has been released from the MSOP program after over twenty years."). The case at bar is distinguishable in the same way.

C.  Factual Similarities.

While the evidence in *Karsjens* is not identical to the evidence in this case, the key facts are the same, including that:

- MSOP's "develop[ment] into indefinite and lifetime detention" stands in stark contrast to the Wisconsin civil commitment program, which has "fully discharged" 118 individuals and placed approximately 135 individuals on supervised release since 1994. It also contrasts with the program in New York, where 30 individuals have been fully discharged – without any recidivism incidents, and has transferred 64 individuals into less secure supervised treatment. *Id.*, at *5-*6.

4

*Missouri's scheme has developed into indefinite and lifetime detention, in contrast to Wisconsin, New York, Virginia, and Washington.*

- MSOP's stated goal of treating and safely reintegrating committed individuals back into the community is "observed in theory but not in practice." *Id.*, at *10.

*David Prescott testified about the same difference between Missouri's theory and practice.*

- MSOP's treatment program does not currently have any "delineated end point." *Id.*, at *15.

*Defendants' expert, Dr. Schlank, testified about the same flaws at SORTS.*

- Individuals are languishing in Phase I and Phase II at MSOP – some for over five years – because they are unable to complete the treatment program due to "cognitive capacity limitations." *Id.*, at *16.

*Missouri's "one size fits all" approach fails class members with intellectual disabilities, who are given the same graduate-level materials as everyone else. Dr. Schlank and David Prescott also noted this failure.*

- MSOP does not provide periodic risk assessments. *Id.*, at *30.

*Missouri does not provide frequent risk assessments, and annual reviews are not meaningful because they emphasize static/historical factors and lack current assessments of the individual's mental state, plus the Annual Reports have focused on requiring there be a change in the mental abnormality of a SORTS resident with little attention, if any, to a reduced risk of re-offending.*

- MSOP risk assessors do not receive legal training. *Id.*, at *20.

5

> *Those preparing forensic reports—such as Dr. Ramesh and Dr. Kline—receive no legal training and, thus, consistently misinterpret and misapply the law.*

- MSOP fails to account for differences in risk level and requires that everyone begin the program at the same phase, thereby denying residents an individualized approach to treatment tailored to their specific needs. *Id.*, at 26.

> *Dr. Schlank testified to "systemic flaws" and shortcomings in SORTS' treatment protocols, such as the inability to respond to the treatment needs specific to the developmentally disabled or the hearing impaired.*

- "The statute's failure to require the state to petition for individuals who no longer pose a danger to the public and no longer need inpatient treatment and supervision for a sexual disorder is a fatal flaw that renders the statute not narrowly tailored and results in a punitive effect and application contrary to the purpose of civil commitment." *Id.*, at *29.

> *Missouri's statutory scheme does not require that the state petition for the release of those no longer meeting commitment criteria and, in fact, no such petition has ever been filed, nor has Missouri's DMH Director ever authorized a SORTS resident to petition for release.*

- MSOP defendants fail to understand and implement the standard for release required by the federal constitution and as explained by the Minnesota Supreme Court: that continued confinement is unconstitutional once an individual no longer requires inpatient treatment *or* is no longer dangerous. *Id.*, at *30.

> *Missouri officials do not heed the requirements of* Foucha v. Louisiana*, 504 U.S. 71 (1992) and* In re Care and Treatment of Coffman*, 225 S.W.3d 439 (Mo. 2007), that*

*persons confined at SORTS must be released when their danger risk level has been reduced below the statutory requirement.*

In aspects all relevant to this case, the *Karsjens* court concluded that MSOP is unconstitutional as applied. The reasons for the conclusion are present in this case: risk assessments are not performed constitutionally, individuals remain confined even though they have completed their treatment or sufficiently reduced their risk, discharge procedures do not work, individuals are not moved to less-restrictive alternatives, and "the treatment program's structure has been an institutional failure and there is no meaningful relationship between the treatment program and an end to indefinite detention." *Id.*, at *33.

\* \* \*

Judge Frank concluded that "[t]he Fourteenth Amendment does not allow the state, DHS, or the MSOP to impose a life sentence, or confinement of indefinite duration, on individuals who have committed sexual offenses once they no longer pose a danger to society." *Id.*, at *33. Thus, the court called for "all of the stakeholders in the criminal justice system and civil commitment system to come together and develop policies and pass laws that will not only protect the public safety and address the fears and concerns of all citizens, but will preserve the constitutional rights of the Class Members." *Id.*, at *36. A similar call is appropriate in this case.

Respectfully submitted,

ROSENBLUM, SCHWARTZ, ROGERS & GLASS, P.C.

/s/ Eric M. Selig
Eric M. Selig, #40673MO
120 South Central Ave., Suite 130
St. Louis, MO 63105
(314) 862-4332
(314) 862-8050 (facsimile)
eselig@rsrglaw.com

ARMSTRONG TEASDALE LLP

John H. Quinn, III #26350MO
Daniel O'Toole, #38051MO
Christopher R. LaRose, #59612MO
Scott Kozak, #49029MO
Ronnie L. White II, #67165MO
7700 Forsyth, Suite 1800
St. Louis, Missouri 63105
(314) 621-5070
(314) 621-5065 (facsimile)
jquinn@armstrongteasdale.com
dotoole@armstrongteasdale.com
clarose@armstrongteasdale.com
skozak@armstrongteasdale.com
rwhite@armstrongteasdale.com

Anthony E. Rothert, #44827MO
Andrew J. McNulty #67138MO
Gillian R. Wilcox, #61278MO
American Civil Liberties Union of Missouri
454 Whittier Street
St. Louis, Missouri 63108
(314) 652-3114
arothert@aclu-mo.org
amcnulty@aclu-mo.org
gwilcox@aclu-mo.org

SUSAN KISTER, P.C.
Susan S. Kister, #37328MO
Attorney at Law
6221 Northwood Avenue
St. Louis, MO  63105
(314) 616-0311
(314) 240-5311
skister@kisterlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June, 2015 I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record.

Joseph Paul Dandurand
Attorney General of Missouri
P.O. Box 899
Jefferson City, MO 65109

Mary Delworth Morris
Attorney General of Missouri
Old Post Office Building
P.O. Box 861
St. Louis, MO 63188

Philip Sholtz
Attorney General of Missouri
P.O. Box 861
St. Louis, MO 63188

Katherine S. Walsh
Attorney General of Missouri
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188

/s/ Eric Selig