UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN VAN ORDEN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:09CV00971 AGF |
| | ) |
| KEITH SCHAFER, et al., | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

This matter is before the Court for consideration of the fairness, reasonableness, and adequacy of a proposed class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure. The settlement agreement proposes injunctive relief to address alleged constitutional violations. The case is somewhat unusual because counsel representing the Plaintiff class have divergent views with respect to the fairness and sufficiency of the proposed settlement. Further, all of the class representatives and most of the class members oppose the settlement. The settlement addresses only the remedial phase of the case, as the Court has already found the statute at issue to be unconstitutional as applied.

The Court finds that the proposed settlement agreement contains provisions directed at the main violations found by the Court, and confers many benefits, not the least of which is finality and immediate implementation. Nevertheless, after careful review, the Court finds that certain deficiencies require denial of the proposed settlement and further court proceedings with respect to an appropriate remedy.

## BACKGROUND

The approximately 225 Plaintiffs in this class action are civilly committed residents of the Missouri Department of Mental Health's ("DMH") Sex Offender Rehabilitation and Treatment Services ("SORTS") facilities, who have been declared sexually violent predators ("SVPs") under Missouri's SVP Act, Mo. Rev. Stat. §§ 632.480-632.525. Plaintiffs filed suit under 42 U.S.C. § 1983, challenging the constitutionality of the SVP Act as written and as applied to SORTS. They named as Defendants various executives and employees of SORTS and the DMH, solely in their official capacities.

At the request of the parties, the case was bifurcated for trial, and the Court held an eight-day bench trial on the issue of liability only, beginning on April 21, 2015. At the trial, the Plaintiff class was represented by several attorneys who worked cooperatively and vigorously represented the class. The Court ultimately concluded that the SVP Act was unconstitutional as applied to SORTS in three specific respects,[1] each of which contributed to the civil commitment of individuals beyond the time and scope permissible under the Due Process Clause. (Doc. No. 501.)

The first constitutional deficiency the Court found was the manner in which Defendants conducted annual assessments of the mental condition of SORTS residents, known as "annual reviews." The evidence at trial showed that annual reviews were the primary tool that the state courts used to evaluate whether a civilly committed person continued to satisfy the statutory criteria for commitment. The Court concluded that SORTS officials responsible for conducting annual reviews were not consistently applying

---

[1] The Court denied relief on Plaintiffs' facial challenge to the SVP Act.

the correct legal standard for evaluating residents' risk level under the statutory criteria. The Court held that the improper application of the annual review mechanism contributed to the continued confinement of individuals beyond the time constitutionally justified. *Id.* at 53-54.

The second constitutional deficiency the Court found was with respect to treatment progress and the lack of any community reintegration program. The Court concluded that residents' progress through the various treatment phases at SORTS was "tortuously slow," that the "lack of clear time frames for such progress . . . contributed to the program's failure to release residents," and that "Defendants' stated goal of treating and safely reintegrating individuals back into the community [was] observed in theory but not in practice." *Id.* at 54. The Court held that the result of these deficiencies was "punitive, lifetime detention of SORTS residents, in violation of the Due Process Clause." *Id.* at 55.

The final constitutional deficiency the Court found was that the release procedures at SORTS were not being performed in the manner required by the SVP Act or the Due Process Clause. The Court concluded that the Director of the DMH (the "Director") had effectively abdicated his statutory duty under Mo. Rev. Stat. § 632.501, which provides that "[i]f the director of the [DMH] determines that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released,[2] the

---

[2] As explained in the Court's opinion on liability, the Missouri Supreme Court has interpreted similar language in the SVP Act to permit civil commitment only if a person is "*both* dangerous *and* has some mental illness or abnormality," and to require release if a resident "can demonstrate that he is no longer likely to commit sexually violent offenses, . . . regardless of whether the reason he is no longer dangerous is primarily mental or physical." *In re Care & Treatment of Coffman*, 225 S.W.3d 439, 446 (Mo. 2007).

director shall authorize the person to petition the court for release."[3] The Court held that the Director had not authorized a single person committed under the SVP Act to petition for conditional release, and that Defendants were instead stalling or blocking Director authorization even when SORTS treatment providers and annual reviewers concluded that a resident qualified for conditional release. The Court held that the Director's failure to comply with the SVP Act in this regard contributed to the unconstitutional confinement of persons who no longer met the criteria for commitment.

The Court held that Plaintiffs' prayers for injunctive relief with respect to these three constitutional violations would be addressed in a second phase of trial, the "Remedies Phase," initially set for March 30, 2016. However, before trial was held in the Remedies Phase, the parties jointly moved to stay all proceedings in order to engage in settlement negotiations. Pursuant to the parties' joint request and 28 U.S.C. § 636(b), the Court referred the case to Retired United States Magistrate Judge Mary Ann Medler, who was approved for recall status, to assist the parties with their efforts to agree to appropriate remedies.

On May 4, 2016, the parties filed a joint motion to approve and direct notice to the class of a proposed settlement. Shortly thereafter, the Court learned that the designated lead

---

[3] As explained in the Court's opinion on liability, petitions filed without the Director's authorization are subject to heightened requirements, including a frivolity review. *See* Mo. Rev. Stat. § 632.504 ("Upon receipt of a first or subsequent petition from committed persons without the director's approval, the court shall endeavor whenever possible to review the petition and determine if the petition is based on frivolous grounds and if so shall deny the petition without a hearing."). Moreover, if a petition filed without the Director's authorization has been found to be frivolous or has been previously denied, the court must deny any subsequent petition "unless the petition contains facts upon which a court could find the condition of the petitioner had so changed that a hearing was warranted." *Id.*

class counsel and supporting class counsel (such counsel referred to herein as "class counsel") believed the proposed settlement was in the best interest of the class. But John H. Quinn, one of the attorneys for the class who took a leading role at the trial, and all but one of the class representatives objected to the proposed settlement.[4] After the parties addressed the propriety of proceeding with a proposed settlement not endorsed by the class representatives, the Court, on August 5, 2016, approved the parties' proposed form of notice and directed notice to the class of the proposed settlement. The Court appointed Mr. Quinn as counsel to represent the class representatives and any other class members who objected to the proposed settlement (Mr. Quinn referred to herein as "objectors' counsel").

Class counsel, Defendants, and objectors' counsel thereafter engaged in further negotiations, which resulted in an amended proposed settlement agreement. (Doc. No. 591-1.) Objectors' counsel continued to oppose the amended proposed settlement on behalf of the class representatives but joined class counsel and Defendants in a request to approve a supplemental notice to the class, advising them of the amended proposed settlement. On September 8, 2016, the Court approved the parties' proposed supplemental notice and directed supplemental notice to the class of the amended proposed settlement. All class members received notice of the original and amended proposed settlements, and a full and fair opportunity to object to or support the amended proposed settlement.

The matter is now before the Court on the parties' motion (Doc. No. 689) for final approval of the amended proposed settlement. Approximately 175 of the 225 of the class members (more than 75% of the class), including all of the class representatives, have

---

[4] One of the class representatives initially approved of the proposed settlement, but that class representative later opposed the proposed settlement.

objected to the amended proposed settlement, largely through objectors' counsel. One class member has filed a letter in support of the amended proposed settlement.

The Court held a fairness hearing on October 20, 2016, during which the Court heard arguments from Defendants and class counsel in support of the amended proposed settlement and from objectors' counsel against the amended proposed settlement.[5]

Based on careful consideration of the amended proposed settlement and objections thereto; the affidavits, testimony, and other evidence of record; and the arguments of counsel, the Court regrettably finds that it must deny the joint motion for final approval of the amended proposed settlement.

## **DISCUSSION**

A district court may approve a class action settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "To make the determination, the district court must consider four factors: (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (citation omitted). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a

---

[5] Objectors' counsel also presented the affidavits of three expert witnesses experienced in the treatment of sexually violent predators; and the affidavits and live testimony of three Missouri public defenders in the civil commitment defense unit, responsible for handling civil commitment cases under the SVP Act. Each of these witnesses offered opinions that, while the amended proposed settlement provides some remedies to improve the SORTS program, it does not adequately address the constitutional violations found by this Court.

balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* (citation omitted).

The Court will primarily address the first and fourth factors. The remaining factors—Defendants' financial condition and the complexity and expense of further litigation—are either neutral or do not weigh heavily in favor of approval. Defendants' financial condition "is not particularly important in [actions that are] not for monetary damages," such as this one. *See Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059 (D.S.D. 2000). And while it may take time to fashion appropriate injunctive relief and to litigate an appeal, most discovery is complete and this seven-year-old case is not at such an early stage that significant time and money would be saved by settlement.

"Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public." *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) (citation omitted).[6] "Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999). And although the district court "may indicate what modifications would make the settlement acceptable to it, . . . it may not require the parties to submit to these modifications." *Little Rock Sch. Dist.*,

---

[6] Of course, this case is different than the norm, as here, the parties and counsel charged with representing the interest of the class do not all agree to the proposed settlement.

921 F.3d at 1388. Rather, the district court "must consider the proposal as a whole and as submitted. Approval must then be given or withheld." *Id.* (citations omitted).

As an initial matter, the parties are commended for attempting to reach an amicable resolution. The amended proposed settlement is the result of hard-fought, arms' length negotiations carried out with the able assistance of Magistrate Judge Medler. It would provide the class with the considerable benefits of immediate relief (without the delay of a trial and appeal), a waiver of Defendants' right to appeal the Court's liability findings, improvement of certain aspects of the SORTS program beyond those the Court found unconstitutional,[7] and the appointment of a Special Master and a Monitor to oversee Defendants' compliance with the settlement's terms and report to the Court for enforcement purposes.

But on balance, those benefits are outweighed by a few significant gaps in the amended proposed settlement, as noted by the objectors, that prevent the proposed settlement from sufficiently providing a fair, reasonable, and adequate remedy for the constitutional violations found in this case. Therefore, applying the factors above and considering the Court's role under Rule 23(e), "as a fiduciary who must serve as a guardian of the rights of absent class members," *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975), the Court cannot approve the amended proposed settlement.

The most significant gaps raised by the objectors relate to two of the constitutional deficiencies found by the Court: treatment progress, as it relates to SORTS' failure to

---

[7] For example, the amended proposed settlement limits Defendants' ability to seek reimbursement from certain SORTS residents, even though this Court denied Plaintiffs' claims challenging Defendants' ability to seek such reimbursement.

release residents; and the Director's statutory duty to authorize persons to petition for release if the Director determines that "the person is not likely to commit acts of sexual violence if released," Mo. Rev. Stat. § 632.501.  These gaps, in combination with a few other deficiencies noted by the objectors, cause the Court to deny the motion to approve the amended proposed settlement.

With respect to treatment progress, the amended proposed settlement provides time frames for expected progress through the various treatment phases at SORTS, and it requires Defendants to provide notice to SORTS residents if the residents do not progress according to the expected time frames or if they are moved back a phase in treatment.  The notice must explain the reasons for the residents' failure to progress or their regression, and must identify concrete steps the residents must take to progress.   The amended proposed settlement also provides for the appointment of a Special Master and a Monitor with authority to monitor and report to the Court regarding the number of residents completing treatment phases within the expected time frames and whether residents are being given the required notices with respect to treatment progress.  These provisions are a very good start to remedying the constitutional defect the Court found with respect to treatment progress.

However, the amended proposed settlement does not require that residents be treated under the least restrictive conditions necessary while receiving treatment.  Further, the amended proposed settlement does not provide any clear mechanism for the Special Master, Monitor, or Court to hold Defendants accountable if they impede residents' treatment progress through community reintegration for reasons unrelated to the purpose for their commitment (namely, their mental condition and dangerousness).  Instead, the amended

proposed settlement provides that, if a resident is moved back in treatment, "the reasons for such action may be challenged by the class member in an appeal to the SORTS Clinical Director, whose decision is final." (Doc. No. 591-1 at 7.) In other words, Defendants could hold residents back in treatment solely as a pretext for warehousing residents in an effort to avoid releasing anyone—not a wholly implausible proposition, given Defendants' systematic failure, in the 16 years leading up to the trial in this case, to support the release of any residents, regardless of whether they met the criteria for continued commitment—and the Court would have no clear authority under the amended proposed settlement to remedy the situation.

Given the importance of this aspect of the remedial phase, the Court is also concerned with the amended proposed settlement's restrictions placed on the Special Master and Monitor. The proposed settlement contains absolute limits of 150 reimbursable hours per year for the Special Master, and 200 reimbursable hours per year for the Monitor. Such limits may prove insufficient, especially in the first years of implementation. Moreover, the duties of the Monitor appear unduly restrictive. At the fairness hearing, the parties confirmed that the Monitor's authority was limited to a list of items to be monitored contained in Exhibit B to the amended proposed settlement. But while Exhibit B authorizes the Monitor to report on the number of residents completing each treatment phase within the expected timelines, it does not authorize the Monitor to evaluate whether residents are moving through each treatment phase as quickly as is appropriate or whether they are returned to earlier phases for inappropriate reasons. In addition, the amended proposed settlement requires that "[i]f the Special Master's report concludes that a substantive

provision is in substantial compliance for two consecutive reports [or one year], the Special Master shall recommend to the Court that the provision no longer be reported on or monitored." *Id.* at 10. This may not be appropriate and, in any event, may be difficult to define.

Likewise, with respect to the Director's duty to authorize persons not likely to commit acts of sexual violence if released to petition for release, the amended proposed settlement provides only a partial remedy. The amended proposed settlement imposes a time frame in which the Director must decide whether to authorize a petition for release (80 days from the date of the request for authorization), and states that if the Director fails to make a decision within that time, "the State will not request that the [state] court find a filing by the petitioner to be frivolous pursuant to [Mo. Rev. Stat.] § 632.504." (Doc. No. 591-1 at 8.) The amended proposed settlement also authorizes the Special Master and Monitor to monitor and report to the Court regarding whether the Director complies with the requirement to render decisions within 80 days.

However, the amended proposed settlement does not provide any clear mechanism for the Special Master, Monitor, or Court to hold the Director accountable if he fails to comply with the substance of § 632.501. In other words, the Director could refuse to authorize a person to petition for release without determining that the person still meets the criteria for civil commitment (a practice this Court has found unconstitutional), and the Court would have no clear authority under the amended proposed settlement to remedy the situation. Arguably, the Director could refuse to authorize petitions for release solely as a pretext to prevent any resident from being released from SORTS.

The Court also questions the adequacy of the amended proposed settlement's five-year termination provision. This appears to be the part of the amended proposed settlement met with the most vigorous opposition by the objectors. Not all of the objections in this regard warrant denial of the amended proposed settlement. For example, the objectors raised a serious concern that the original proposed settlement could have been read to terminate the Court's jurisdiction to enforce the settlement automatically after five years, even if Defendants had taken no steps to comply with the settlement. However, the amended proposed settlement addresses this issue by plainly providing that if Defendants have not complied with an order for specific performance, termination will be deferred until Defendants comply with that order for specific performance.

Additionally, while the objectors were concerned that the amended proposed settlement does not expressly provide for court-appointed counsel to represent the class members in enforcing the settlement, that concern is unfounded. At the fairness hearing, class counsel (consisting of appointed attorneys and those who voluntarily entered their appearance, such as attorneys from the American Civil Liberties Union of Missouri), stated that they intended to represent the class through the pendency of the case, including for purposes of enforcing the settlement, and that the only reason they did not include an express provision to that effect was that they believed continued legal representation was presumed unless the Court permitted withdrawal (which none of the attorneys had requested). Indeed, the amended proposed settlement expressly provides for the Court's continued jurisdiction, and references notice to and a continuing role for class counsel in several places. *See, e.g., id.* at 10. Finally, the objectors' concern that Defendants will

revert to their prior patterns immediately upon termination of the settlement does not warrant an arbitrary or unlimited extension of the settlement's term. The Court cannot assume jurisdiction in perpetuity. *See In re Pearson*, 990 F.2d 653, 658 (1st Cir. 1993) ("In institutional reform litigation, injunctions should not operate inviolate in perpetuity.").

Nevertheless, the Court is concerned that the amended proposed settlement's termination provision creates an unduly adversarial structure. As drafted, the proposed settlement encourages requests for specific performance on issues large and small to prevent termination, as opposed to a reasoned request for termination upon demonstrated substantial compliance. Unnecessary adversarial relations during the course of implementation of the remedial phase are not in the interest of justice and can only serve to further hamper trust between Defendants and the residents, and the development of a proper program focused on treatment and release.

The extensive opposition to the amended proposed settlement also supports a denial of the settlement. A settlement can be fair notwithstanding a large number of objectors and even when all class representatives oppose the settlement. *See Marshall*, 787 F.3d at 513 (citing *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226-27 (8th Cir. 1982) (finding no abuse of discretion in district court's approval of a class action settlement even though both named plaintiffs and 790 of approximately 3,000 members objected to it)). Nevertheless, the number of objectors is a significant consideration, and "at some point objections from the class may become so numerous that in a very real sense it can be said that 'the class' has not agreed to the proposal, that counsel's perceptions of the best interests of the class are faulty, and that approval of the settlement by the district court constitutes an abuse of

discretion." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978) (holding that the district court's approval of a backpay settlement constituted an abuse of discretion where all active named plaintiffs and 70% of the subclass objected).

Not all of the written objections filed by class members are relevant to this case. *See, e.g.*, Doc. No. 594 (objecting that the SVP Act discriminates against men on the basis of sex, which was not a claim in this case). And some of the objections simply do not warrant denial of the amended proposed settlement, such as the objection raised by many objectors regarding the limitations on the use of the amended proposed settlement agreement as evidence in other cases. But the sheer number of objections, and particularly to the extent that they address the gaps in the amended proposed settlement discussed above, convince the Court that it should withhold approval and allow the Remedies Phase to proceed to a trial.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that class counsel's motion for final approval of the amended proposed settlement is **DENIED**. (Doc. No. 689.)

**IT IS FURTHER ORDERED** that within **14 days** of the date of this Order, the parties shall file a joint proposed schedule for litigation of the Remedies Phase.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of November, 2016.