UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN VAN ORDEN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:09CV00971 AGF |
| | ) | |
| JEFF STRINGER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon review of the parties' briefs, invited by the Court, as to whether the Court should reconsider its December 22, 2015 Amended Memorandum Opinion on liability ("Liability Opinion") in light of the United States Court of Appeals for the Eighth Circuit's decision in *Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017).[1] At the request of Plaintiffs, the Court held oral argument on this issue on June 23, 2017.

In its Liability Opinion, the Court found that Missouri's civil commitment statute for sexually violent predators ("SVP Act"), Mo. Rev. Stat. §§ 632.480-632.525, was unconstitutional as applied to the Missouri Department of Mental Health's ("DMH") Sex Offender Rehabilitation and Treatment Services ("SORTS") facilities. In *Karsjens*, the Eighth Circuit rejected a substantially similar challenge to the SVP civil commitment statute

---

[1] The Eighth Circuit denied the plaintiffs' petition for rehearing en banc in *Karsjens* on February 22, 2017, and on May 19, 2017, the plaintiffs filed a petition for writ of certiorari in the United States Supreme Court.

and treatment program in Minnesota. With some reluctance, in light of the extensive proceedings to date, the Court finds that *Karsjens* compels reconsideration of the Liability Opinion and entry of judgment in favor of Defendants, as Defendants request in their brief.

## **BACKGROUND**

The approximately 225 Plaintiffs in this class action are civilly committed residents of SORTS, who have been declared sexually violent predators under Missouri's SVP Act. Plaintiffs filed suit under 42 U.S.C. § 1983, and named as Defendants various executives and employees of SORTS and the DMH, solely in their official capacities. In their Fifth Amended Complaint, Plaintiffs asserted that the SVP Act was unconstitutional as written and as applied to SORTS, and that the reimbursement sought by the state from SORTS residents was also unconstitutional.[2]

On September 30, 2011, the Court certified this case as a class action under Federal Rule of Civil Procedure 23(b)(2). After extensive informal and formal discovery, the Court, on December 19, 2014, granted Plaintiffs' uncontested motion to bifurcate the trial into two phases: liability and remedy. ECF No. 358. The Court held an eight-day bench trial on the issue of liability only, beginning on April 21, 2015.

The only claims remaining for trial were that the SVP Act on its face and as applied to SORTS, as well as the reimbursement sought by the state from SORTS residents, violated Plaintiffs' substantive due process rights. In their as-applied challenge to the SVP Act,

---

[2]   In this lawsuit, Plaintiffs did not challenge their initial commitment. However, the Court notes that on June 27, 2017, the Supreme Court of Missouri reviewed the civil commitment process under the SVP Act and held, as it has previously, that the commitment process is constitutional. *Matter of Care & Treatment of Kirk v. State*, No. SC 95752, 2017 WL 2774419, at *2 (Mo. June 27, 2017).

Plaintiffs claimed that (1) particular modalities of treatment at SORTS were inadequate due to staff and funding shortages, and (2) the entire SORTS treatment program was a sham because, in its 16 years of operation, SORTS had neither established the risk assessment and release procedures contemplated by the SVP Act, nor successfully treated and released any residents back into the community following such treatment.

In its Liability Opinion, the Court denied relief on Plaintiffs' facial challenge to the SVP Act, Plaintiffs' claim challenging the state's reimbursement scheme, and Plaintiffs' as-applied challenge regarding the adequacy of SORTS' treatment modalities. However, the Court concluded that the SVP Act was unconstitutional as applied to SORTS with respect to certain discrete aspects of risk assessment and release.

The first constitutional deficiency the Court found was the manner in which Defendants conducted annual assessments of the mental condition of Plaintiffs, known as "annual reviews." The evidence at trial showed that annual reviews were the primary tool that the state courts used to evaluate whether a civilly committed person continued to satisfy the statutory criteria for commitment. The Court concluded that SORTS officials responsible for conducting annual reviews were not consistently applying the correct legal standard for evaluating Plaintiffs' risk level under the statutory criteria. The Court held that the improper application of the annual review mechanism contributed to the continued confinement of Plaintiffs beyond the time constitutionally justified. ECF No. 501 at 53-54.

The second constitutional deficiency the Court found was with respect to the release portion of the SORTS treatment program and the lack of any community reintegration program. The Court concluded that Defendants' stated goal of treating and safely

reintegrating Plaintiffs back into the community was observed in theory but not in practice, and that the release portion of SORTS was a sham. *Id.* at 54-55. In particular, the Court found that SORTS undisputedly had residents who, because of their age and physical infirmity or because of their treatment progress, had reduced their risk below the standard required for commitment, but that Defendants consistently opposed the release of such residents and had not designed any procedures for their community reintegration.

The final constitutional deficiency the Court found was with respect to the release procedures at SORTS. The Court concluded that the Director of the DMH had effectively abdicated his statutory duty under Mo. Rev. Stat. § 632.501, which provides that "[i]f the director of the [DMH] determines that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released,[3] the director shall authorize the person to petition the court for release."[4] The Court found that the Director had not authorized a single person committed under the SVP Act to petition for conditional release, and that Defendants were instead stalling or blocking Director authorization even

---

[3] As explained in the Court's Liability Opinion, the Missouri Supreme Court has interpreted this language to permit civil commitment only if a person is "*both* dangerous *and* has some mental illness or abnormality," and to require release if a resident "can demonstrate that he is no longer likely to commit sexually violent offenses, . . . regardless of whether the reason he is no longer dangerous is primarily mental or physical." *In re Care & Treatment of Coffman*, 225 S.W.3d 439, 446 (Mo. 2007).

[4] As explained in the Court's Liability Opinion, petitions filed without the Director's authorization are subject to heightened requirements, including a frivolity review. *See* Mo. Rev. Stat. § 632.504 ("Upon receipt of a first or subsequent petition from committed persons without the director's approval, the court shall endeavor whenever possible to review the petition and determine if the petition is based on frivolous grounds and if so shall deny the petition without a hearing."). Moreover, if a petition filed without the Director's authorization has been found to be frivolous or has been previously denied, the court must deny any subsequent petition "unless the petition contains facts upon which a court could find the condition of the petitioner had so changed that a hearing was warranted." *Id.*

when SORTS treatment providers and annual reviewers concluded that a resident qualified for conditional release.

In arriving at these conclusions, the Court held that the standard of review for a substantive due process challenge to civil commitment statutes was not strict scrutiny, as Plaintiffs advocated. Rather, the Court applied the standard set forth by the United States Supreme Court in *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), which held that "[a]t the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Moreover, to the extent that Plaintiffs' as-applied claim required a further finding that the constitutional violation was conscience-shocking, as Defendants had argued, the Court found that Defendants' conduct with respect to risk assessment and release as described above did indeed shock the conscience. ECF No. 501 at 57.

The Court held that Plaintiffs' prayers for injunctive relief with respect to the constitutional violation found by the Court would be addressed in a second phase of trial, the "Remedies Phase," initially set for March 30, 2016. However, before trial was held in the Remedies Phase, the parties jointly moved to stay all proceedings in order to engage in settlement negotiations. After extensive negotiations with the assistance of Retired United States Magistrate Judge Mary Ann Medler, a proposed settlement was reached.

Approximately 175 of the 225 of the class members (more than 75% of the class), including all of the class representatives, objected to the proposed settlement and were represented by appointed counsel. Although the Court permitted class members to file letters in support of the proposed settlement, only one class member did so. The objectors,

through appointed counsel, stated in their briefs and at a fairness hearing before this Court that they understood that the proposed settlement would eliminate the significant risk associated with an appeal of this case, and/or of an adverse decision in the then-pending appeal of *Karsjens*. But the objectors nevertheless opposed the settlement because it did not fully address the violations found in the Court's Liability Opinion. On November 23, 2016, after careful consideration of the settlement's terms and objections thereto, the Court denied the motion to approve the proposed settlement. The Remedies Phase trial was thereafter scheduled for June 12, 2017.

Meanwhile, on January 3, 2017, the Eighth Circuit issued its opinion in *Karsjens*. The district court in *Karsjens* had found that the Minnesota civil commitment statute was unconstitutional on its face and as applied, and applied strict scrutiny to both types of claims. *Karsjens v. Jesson*, 109 F. Supp. 3d 1139, 1166, 1170 (D. Minn. 2015). The district court concluded that the statute was facially unconstitutional in a number of respects primarily related to deficiencies in risk assessment and release procedures, which the court found authorized "prolonged commitment, even after committed individuals no longer pose a danger to the public," and "result[ed] in a punitive effect and application contrary to the purpose of civil commitment." *Id.* at 1168-70.

The district court in *Karsjens* also concluded that the statute was unconstitutional as applied to Minnesota's treatment program ("MSOP") for reasons again largely related to risk assessment and release, and which also resulted in the plaintiffs "being confined to MSOP beyond such a time as they either meet the statutory reduction in custody criteria or no longer satisfy the constitutional threshold for continued commitment." *Id.* at 1170.

In its findings of fact, the district court specifically found that "MSOP knows that there are Class Members who meet the reduction in custody criteria or who no longer meet the commitment criteria but who continue to be confined at the MSOP," and that "[d]espite its knowledge that individuals have met the criteria for release, the MSOP has never petitioned on behalf of a committed individual for full discharge." *Id.* at 1164. The district court then concluded that the Minnesota statute was unconstitutional as applied for the following reasons:

> Defendants do not conduct periodic, independent risk assessments or otherwise evaluate whether an individual continues to meet the initial commitment criteria or the discharge criteria if an individual does not file a petition; (2) those risk assessments that have been performed have not all been performed in a constitutional manner; (3) individuals have remained confined at the MSOP even though they have completed treatment or sufficiently reduced their risk; (4) discharge procedures are not working properly at the MSOP; (5) although section 253D [of the Minnesota statute] expressly allows the referral of committed individuals to less restrictive alternatives, this is not occurring in practice because there are insufficient less restrictive alternatives available for transfer and no less restrictive alternatives available for initial commitment; and (6) although treatment has been made available, the treatment program's structure has been an institutional failure and there is no meaningful relationship between the treatment program and an end to indefinite detention.

*Id.* at 1173-74. As with the facial violation, the district found that the as-applied constitutional violation resulted in "a punitive effect and application contrary to the purpose of civil commitment." *Id.* at 1174. The district court entered injunctive relief to remedy these deficiencies.

The Eighth Circuit reversed. In doing so, the Eighth Circuit first held that the district court applied the wrong standard of scrutiny to the plaintiffs' facial and as-applied substantive due process claims. *Karsjens*, 845 F.3d at 407. In particular, the Eighth Circuit

held that "[a]lthough the Supreme Court has characterized civil commitment as a significant deprivation of liberty, it has never declared that persons who pose a significant danger to themselves or others possess a fundamental liberty interest in freedom from physical restraint." *Id*. (citing *Addington v. Texas*, 441 U.S. 418, 425 (1979) and *Foucha v. Louisiana*, 504 U.S. 71, 116 (1992) (Thomas, J., dissenting)).

The Eighth Circuit relied on *Jackson v. Indiana*'s "reasonable relation" test, as did this Court, and held that the proper standard of scrutiny to be applied to the plaintiffs' facial due process challenge was whether the statute "bears a rational relationship to a legitimate government purpose." *Id.* at 407-08. The Eighth Circuit concluded that the Minnesota statute, on its face, survived this highly deferential reasonable relationship review. *Id.* at 409.

With respect to the as-applied challenge, the Eighth Circuit held that the proper standard was to require the plaintiffs to demonstrate "*both* that the state defendants' conduct was conscience-shocking, *and* that the state defendants violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* at 408 (quoting *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue)). To shock the conscience, the Eighth Circuit held that "the alleged substantive due process violations must involve conduct so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Id.*

(citing *Moran*, 296 F.3d at 647 (quoting *In re Scott Cty. Master Docket*, 672 F. Supp. 1152, 1166 (D. Minn. 1987)).

The Eighth Circuit held that the grounds upon which the district court relied in finding an as-applied due process violation could not satisfy the conjunctive standard applicable to such a claim. Accordingly, the Eighth Circuit denied relief on the as-applied claim. *Id.* at 410-411.

In their briefs now before the Court, the parties dispute the effect *Karsjens* has on this Court's finding of liability with respect to Plaintiff's as-applied claim challenging risk-assessment and release.[5] Plaintiffs assert that *Karsjens* has no effect on the Court's Liability Opinion because the Court found that Defendants' conduct was conscience-shocking. Plaintiffs characterize the Eighth Circuit's statement that as-applied substantive due process claims require both a violation of a fundamental liberty interest and conscience-shocking conduct as dicta. In any event, Plaintiffs argue that *Karsjens* did not foreclose a finding that "the use of lifetime, punitive detention" implicates a fundamental liberty interest. ECF No. 764 at 8-9.

At oral argument, Plaintiffs also insisted that the Court is free to disregard the Eighth Circuit's conclusion that the Minnesota defendants' conduct did not shock the conscience. According to Plaintiffs, the Eighth Circuit's decision in this respect was contrary to the United States Supreme Court's decisions in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) and other cases, because the Eighth Circuit appeared to incorporate an intent-to-harm

---

[5] The parties agree that *Karsjens* does not affect the Court's denial of relief on Plaintiffs' remaining claims, including Plaintiffs' facial challenge.

requirement into the shocks-the-conscience standard, notwithstanding that the state defendants had time to deliberate prior to taking action.

Defendants argue that *Karsjens* compels reconsideration of the Liability Opinion to the extent it granted relief on Plaintiffs' as-applied claim. Defendants argue that under *Karsjens*, Plaintiffs' as-applied claim is subject to a conjunctive standard requiring conduct that both violates a fundamental liberty interest and shocks the conscience. Defendants contend that, like the Minnesota plaintiffs in *Karsjens,* Plaintiffs here cannot satisfy the first prong because "the Eighth Circuit held that persons committed pursuant to sexually-violent predator statutes do not possess a fundamental liberty interest in being free of confinement." ECF No. 765 at 14. Defendants insisted at oral argument that, in light of this holding, even if the state defendants continued to confine civilly committed individuals whom the defendants knew were no longer mentally ill or dangerous, such conduct would not give rise to a substantive due process violation. Rather, Defendants argued, such civilly committed individuals would have to seek relief in the state courts using the procedures available under the state civil commitment statute or assert that such procedures are insufficient in terms of procedural due process.

Defendants further argue that even if a fundamental liberty interest were at stake, the Liability Opinion's findings with respect to risk-assessment and release "mirror closely the putative deficiencies in the Minnesota program that the Eighth Circuit held to be categorically insufficient to satisfy the conscience-shocking test." *Id.* at 17-18. At oral argument, Defendants maintained that the Eighth Circuit's holding with respect to the shocks-the-conscience test is consistent with prior Eighth Circuit precedent and is binding

on this Court. For these reasons, Defendants argue that the Court should reconsider the Liability Opinion and enter judgment in favor of Defendants.

## DISCUSSION

A "district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007). In particular, reconsideration may be justified in light of an intervening development in the controlling law. *See Westinghouse Elec. Co. v. United States*, No. 4:03CV861 CDP, 2009 WL 881605, at *4 (E.D. Mo. Mar. 30, 2009); *see also Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997) ("Where the district court believes that an earlier decision was reached in error, it may revisit the decision to avoid later reversal.") (citation omitted).

The Court believes that reconsideration is required here in light of *Karsjens*. The Eighth Circuit clearly held that "to maintain an as-applied due process challenge, the class plaintiffs have the burden of showing the state actors' actions were conscience-shocking *and* violate a fundamental liberty interest." *Karsjens*, 845 F.3d at 410 (emphasis added).[6] The Eighth Circuit further held that claims substantially similar to the ones alleged here do not

---

[6] As Plaintiffs note, other circuits have appeared to treat the test as disjunctive. *See, e.g., Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) ("Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'"); *Seegmiller v. LaVerkin City*, 528 F.3d 762, 768 (10th Cir. 2008) (holding that "the real issue in substantive due process cases [is]: whether the plaintiff suffered from governmental action that *either* (1) infringes upon a fundamental right, *or* (2) shocks the conscience," and that "the 'shocks the conscience' and 'fundamental liberty' tests are but two separate approaches to analyzing governmental action under the Fourteenth Amendment") (emphasis added).

implicate a fundamental liberty interest. Although these holdings raise troubling questions as to whether civil commitment statutes can ever be challenged on as-applied substantive due process grounds, they are binding on this Court. And they end the Court's inquiry because, according to *Karsjens*, without a fundamental liberty interest, Plaintiffs' as-applied claim fails no matter how shocking the state defendants' conduct.

In any event, the Court cannot distinguish Defendants' conduct with respect to risk assessment and release from the conduct of the state defendants in *Karsjens*, which the Eighth Circuit definitively held was not conscience-shocking. Applying the standard used by the Eighth Circuit in *Karsjens*,[7] the Court may have still held that, at the least, continuing to confine the aged and infirm who are undisputedly no longer dangerous shocks the conscience. But *Karsjens* precludes such a holding. There, too, the district court found that the state defendants continued to confine individuals known to no longer meet the criteria for commitment, but according to the Eighth Circuit, neither this nor any of the other actions taken by the state defendants was enough to shock the conscience.

The Supreme Court has held that "substantive due process demands an exact analysis of circumstances" before determining whether conduct shocks the conscience. *Lewis*, 523 U.S. at 850. And as Plaintiffs correctly note, in *Lewis*, relied heavily upon by the Eighth Circuit in *Karsjens*, the Supreme Court distinguished circumstances in which "actual deliberation is practical," such as a "custodial prison situation," from those in which "decisions [are] necessarily made in haste, under pressure, and frequently without the luxury

---

[7] In finding Defendants' conduct conscience-shocking in its Liability Opinion, the Court, under *Lewis*, 523 U.S. at 850, did not assume the standard required malice or intent to harm.

of a second change," such as a prison riot or high-speed chase. *Id.* at 852-53. The Supreme Court held that, in the former circumstance, "deliberate indifference can rise to a constitutionally shocking level," whereas in the latter, a "purpose to cause harm" is needed to shock the conscience. *Id.* at 852-53.

The *Karsjens* opinion did not discuss this distinction when determining that the Minnesota defendants' conduct with respect to risk assessment and release of civilly committed individuals did not shock the conscience. *Id.* at 411. Nevertheless, the opinion "is controlling until overruled by [the Eighth Circuit] en banc, by the Supreme Court, or by Congress." *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Court's December 22, 2015 Amended Memorandum Opinion (ECF No. 501) is **VACATED in part**, to the extent that it granted Plaintiffs' claims in part, and Plaintiffs' claims are hereby **DENIED**.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 6th day of July, 2017.