# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-3093
_____

John R. Van Orden; Michael D. McCord; Joseph Miller; Macon Baker; Chance W. Tyree; Walter W. Ritchey; David Brown; Anthony Amonette; Richard Tyson; Wade A. Turpin; Matthew King; Andre Cokes; Joseph Bowen, Class Representative; William Murphy, Class Representative,

*Plaintiffs - Appellants*,

v.

Mark Stringer; Harold Myers, Reimbursement Officer, HealthLink, Individually and Officially; Alan Blake, Chief Operating Officer, MSOTC, Individually and Officially; Julie Inman; Jay Englehardt; Justin Arnett; Rick Gowdy, in his official capacity as Director of the Missouri Department of Mental Healths Division of Behavioral Health; Robert Reitz; Linda Moll; Daman Longworth; Donna Augustine; Dave Schmitt; Ericka L. Kempker; Kristina Bender-Crice; Angeline Stanislaus, in her official capacity as Chief Clinical Officer of the Missouri Department of Mental Health; Anne Precythe, in her official capacity as Director of the Missouri Department of Corrections; Rikki Wright, in his official capacity as Deputy Director of the Missouri Department of Mental Health for the Division of Behavioral Health; David Schmitt, in his official capacity as Chief Operating Officer of Southeast Missouri Mental Health Centers Adult Psychiatric Services; Andy Atkinson, in his official capacity as Chief Operating Officer of Fulton State Hospital; Lee Ann McVay, in her official capacity as Program Coordinator at SORTS-Fulton State Hospital; Susan Knopflein, in her official capacity as Chief Nurse Executive at Fulton State Hospital,

*Defendants - Appellees*.
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 26, 2018
Filed: September 11, 2019

_____

Before COLLOTON, BEAM, and GRASZ, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A class of civilly-committed residents of Missouri's civil commitment program for certain sex offenders appeal the dismissal of their claims against state officials. The residents allege that the state officials deprived them of constitutional rights under the rubric of substantive due process. The district court[1] initially found the defendants liable for constitutional violations, but reconsidered in light of *Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017), and entered judgment on behalf of the state officials. The residents appeal, and we affirm.

I.

In 1998, the Missouri legislature enacted the Missouri Sexually Violent Predator Act to govern the civil commitment of persons adjudicated to be sexually violent predators. *See* 1998 Mo. Legis. Serv. 106 (West); Mo. Rev. Stat. §§ 632.480-632.525. A person may be committed in the program only if a judge or jury determines by clear and convincing evidence that he is a sexually violent predator. Mo. Rev. Stat. § 632.495.1. A "[s]exually violent predator" is a person who, among other things, has a "mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." *Id.* § 632.480(5).

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

After commitment, Missouri law provides avenues to secure conditional release. The director of the department of mental health (or his designee) is required to prepare an annual report on each resident's mental condition and provide it to the state court that committed the person. *Id.* § 632.498.1. If the director determines that a resident is no longer likely to commit acts of sexual violence, then he "shall authorize the person to petition the court for release." *Id.* § 632.501. Alternatively, a resident may file his own petition for release without director approval. *See id.* §§ 632.498.2, .504. If the court at a hearing determines by a preponderance of the evidence that the committed person is no longer likely to engage in acts of sexual violence if released, then the person is entitled to a trial on the issue. *See id.* § 632.498.4; *In re Coffman*, 225 S.W.3d 439, 442-44 (Mo. 2007). To justify continued commitment, the State must prove by clear and convincing evidence that the person is still likely to engage in acts of sexual violence if released. Mo. Rev. Stat. § 632.498.5(3). Otherwise, the person is entitled to conditional release. *See id.* §§ 632.498.5(4), .505.1.

In 2009, a group of civilly-committed persons brought suit on behalf of themselves and those similarly situated against state officials responsible for operating the program. The fifth amended complaint alleged, *inter alia*, that the State's commitment provisions are facially unconstitutional, and that the treatment program as applied to the residents violates their substantive due process rights. The treatment program, the complaint alleged, is a "sham" that does not provide a "realistic opportunity for release." For purposes of the treatment claims, the district court certified a class under Federal Rule of Civil Procedure 23(a) and (b)(2) made up of "persons who are, or will be, during the pendency of this action," residents of Missouri's commitment program for sexually violent predators.

The district court held a bench trial in April 2015 and entered an order on the question of liability. The court ruled that the Act is not unconstitutional on its face, and dismissed the state-law claims with prejudice, but granted a declaration that the

Act is unconstitutional as applied to the class.  The court concluded the treatment program suffered from three "constitutional deficienc[ies]."

First, the court found that "annual reviewers have not been applying the correct legal standard when evaluating whether a resident meets the criteria for conditional release."  The result, the court believed, was that residents remained confined "beyond the time constitutionally justified."  Second, the court found that state officials were not releasing low-risk residents into less restrictive housing, and had "not even designed procedures to do so," but were instead imposing an indefinite "release without discharge" condition on those residents.  Third, the court found that the director of the department of mental health had "abdicated his duty" to authorize petitions for release of low-risk residents, resulting in "the continued confinement of persons who no longer meet the criteria for commitment."

Before reaching the remedies phase, the district court *sua sponte* requested briefing on whether it should reconsider its liability order in light of our intervening decision in *Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017).  In *Karsjens*, this court rejected an as-applied substantive due process challenge to Minnesota's civil commitment program for sexually dangerous persons.  *See id.* at 410-11.  The district court concluded that the underlying findings in *Karsjens* were materially indistinguishable from those in its own liability order, so it reconsidered that order and rejected the residents' as-applied constitutional claims.  The district court later denied the residents' motion to alter or amend the judgment on their state-law claims to a dismissal *without* prejudice.

We review the district court's findings of fact for clear error and its legal conclusions *de novo*.  *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011).  The denial of the motion to alter or amend the judgment is reviewed for abuse of discretion.  *Sipp v. Astrue*, 641 F.3d 975, 980-81 (8th Cir. 2011).

-4-

II.

A.

To prevail on an as-applied substantive due process claim, the residents must show both that the state officials' conduct is conscience-shocking and that it violated a fundamental right of the residents. *See Terrell v. Larson*, 396 F.3d 975, 978 n.1 (8th Cir. 2005) (en banc); *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue). One question in a substantive due process challenge to executive action is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998). Another prerequisite for such a claim is that the officials' conduct violated "one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty." *Moran*, 296 F.3d at 651 (Bye, J., concurring and writing for a majority) (internal quotation marks omitted). The claims here founder on both elements.

The residents, of course, have a liberty interest in freedom from state custody, but in this case, their liberty was constrained in accordance with due process of law. All were adjudicated as sexually violent predators in the Missouri courts, and there is no dispute that they were constitutionally deprived of liberty on that basis. *See Kansas v. Hendricks*, 521 U.S. 346, 356-60 (1997). A civilly-committed person also has a liberty interest in gaining release from detention if the reasons that justified the commitment no longer exist. *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975). But Missouri law provides a procedure under which a committed person can petition for release, and a state court must determine whether the person still suffers from a mental abnormality that makes him likely to engage in acts of sexual violence if released. Mo. Rev. Stat. §§ 632.498.2-.5, .504. If a person invokes those procedures, and a court properly determines that he remains a sexually violent predator, then there

-5-

is continued deprivation of liberty, but that deprivation occurs with due process of law.

In this litigation, the residents have proceeded as a class, seeking the same relief as to every class member. *See* Fed. R. Civ. P. 23(b)(2). They do not claim that the class members as a group are entitled to release. They urge instead that the defendant officials have failed to implement certain statutory requirements in a way that will release residents from detention when appropriate, and they seek injunctive relief that directs the officials to operate differently. Whatever the merits of the claims that Missouri officials are not properly implementing the Act, we conclude that the concept of substantive due process does not encompass a fundamental right in having the state officials perform as requested.

For purposes of substantive due process, a fundamental right or liberty is one that is "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotations omitted). The residents suggest that they are pursuing a fundamental right of freedom from bodily restraint that meets the foregoing criteria. *See Zadvydas v. Davis*, 533 U.S. 678, 690-95 (2001). But their claim in this litigation is different. They do not assert a typical substantive due process claim against "certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (internal quotation omitted). Rather, they contend that the defendant officials must change the way that they conduct annual reviews of civilly-committed persons, design procedures for releasing low-risk residents into less restrictive housing, and carry out a statutory duty to authorize petitions for release of low-risk residents.

An entitlement to these actions is not deeply rooted in the Nation's history and tradition or implicit in the concept of ordered liberty. Regardless of how the

defendant officials carry out their functions under state law, the Act provides that a civilly-committed person may petition a state *court* for release on the ground that the person no longer suffers from a mental abnormality that makes him likely to engage in acts of sexual violence if released. *See* Mo. Rev. Stat. § 632.498.2-.4. Whether or not the department of mental health applies the correct legal standard in conducting its annual review of the committed person, or authorizes a petition for release in the name of the director, the committed person is entitled to review of his continued detention by an independent judicial officer. The state court is duty-bound to apply the correct legal standards regardless of the director's potential shortcomings in carrying out his functions under state law. *See id.* § 632.498.4. If the state court (or a jury) determines based on the evidence that the person is no longer likely to engage in acts of sexual violence, then the court must order him conditionally released. *Id.* § 632.498.5(4). And despite the asserted flaws in the department's program for releasing low-risk residents into less restrictive housing, the state court has final authority to determine what conditions should apply, including whether a resident should be released without discharge or into the community. *See id.* § 632.505.3.

The availability of these procedures is sufficient to vindicate a resident's liberty interest in gaining release from detention once the reasons that justified the commitment dissipate. That the Act provides additional opportunities to facilitate release, and that state officials allegedly have failed to implement them properly, does not run afoul of substantive due process.

The residents insist that once the State adopted the Act, they enjoyed "state-created liberty interests" that could not be infringed. This argument confuses procedural due process and the concept of substantive due process. "[S]tate statutes may create liberty interests that are entitled to the *procedural* protections of the Due Process Clause of the Fourteenth Amendment." *Vitek v. Jones*, 445 U.S. 480, 488 (1980) (emphasis added). The residents, however, claim a *substantive* due process right to certain actions by state officials. Fundamental rights or liberties that are

-7-

protected by substantive due process are those implicit in the concept of ordered liberty or derived from our Nation's history and tradition; they are not created by States. *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017). The residents also contend that a periodic review requirement under state law was a "key reason" why the Supreme Court upheld a civil commitment scheme for sexually violent predators in *Hendricks*, so periodic review of the sort they demand must be required by substantive due process. The Court in *Hendricks*, however, cited periodic review as evidence that the Kansas statute was not "punitive" for purposes of a different claim under the Double Jeopardy Clause. 521 U.S. at 364. The residents here invoke only substantive due process in their appeal, and they have not demonstrated the violation of a fundamental right under that rubric.

Alternatively, we agree with the district court that the rationale of our decision in *Karsjens* that Minnesota's commitment scheme did not shock the conscience dictates the same outcome here. In *Karsjens*, the district court had determined the Minnesota program was unconstitutional as applied for six reasons:

> (1) Defendants do not conduct periodic independent risk assessments or otherwise evaluate whether an individual continues to meet the initial commitment criteria or the discharge criteria if an individual does not file a petition; (2) those risk assessments that have been performed have not all been performed in a constitutional manner; (3) individuals have remained confined [in the program] even though they have completed treatment or sufficiently reduced their risk; (4) discharge procedures are not working properly [in the program]; (5) although section 253D expressly allows the referral of committed individuals to less restrictive alternatives, this is not occurring in practice because there are insufficient less restrictive alternatives available for transfer and no less restrictive alternatives available for initial commitment; and (6) although treatment has been made available, the treatment program's structure has been an institutional failure and there is no meaningful relationship between the treatment program and an end to indefinite detention.

*Karsjens*, 845 F.3d at 402-03.  This court concluded that "[n]one of the six grounds upon which the district court determined the state defendants violated the class plaintiffs' substantive due process rights in an as-applied context satisfy the conscience-shocking standard." *Id.* at 410.

The deficiencies the district court found in the Missouri program are no more egregious or outrageous than those at issue in *Karsjens*. The district court found that Missouri's annual reviewers have not been applying the correct legal standard for assessing eligibility for conditional release, resulting in prolonged confinement of low-risk residents. But Minnesota had no periodic risk assessments whatsoever. The district court here found that Missouri officials have not released low-risk residents into less restrictive facilities or created procedures to that end. "[I]n practice," however, Minnesota did not release low-risk residents into less restrictive facilities either. *Id.* at 402. The district court here found that the director of the Missouri department of mental health had not authorized even one resident to petition for conditional release, and that state officials were "stalling or blocking" authorizations for qualified residents. Yet Minnesota had no requirement that officials take any "affirmative action" at all, "such as petition for a reduction in custody, on behalf of individuals who no longer satisfy the criteria for continued commitment." *Id.* Because the shortcomings cited by the district court in Missouri mirror those that *Karsjens* held were not conscience-shocking in Minnesota, the district court correctly reasoned that the as-applied substantive due process claims should be dismissed.

To avoid this conclusion, the residents argue that the court in *Karsjens* incorrectly applied an intent-to-harm standard for conscience-shocking conduct, and that "deliberate indifference" to liberty is the proper standard. *Karsjens* is not entirely clear on this point. The issue was not raised in briefs before the *Karsjens* panel because the plaintiffs disputed that the conscience-shocking standard applied at all. The *Karsjens* opinion, *id.* at 408, did refer to conduct inspired by "malice or sadism" (language associated with intent to harm), but it also framed the issue as whether the

-9-

defendants' actions were "egregious or outrageous," a phrase that aligns with the understanding that deliberate indifference involves "patently egregious" conduct. *See Lewis*, 523 U.S. at 850-51.

The residents submit that a deliberate indifference standard must apply here, because the defendant officials had sufficient time to reflect and deliberate about their actions. They point to the statement in *Lewis* that the deliberate indifference standard "is sensibly employed only when actual deliberation is practical." *Id*. at 851. The State responds that decisions from other circuits have suggested that something more akin to an intent-to-harm standard may apply when officials, after deliberating, are forced to choose among competing, legitimate interests. *See Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 541-42 (6th Cir. 2008); *Matican v. City of New York*, 524 F.3d 151, 158-59 (2d Cir. 2008); *Schieber v. City of Philadelphia*, 320 F.3d 409, 419-20 (3d Cir. 2003). The State suggests that the need for officials to balance the competing obligations of community safety and proper treatment makes the intent-to-harm standard appropriate here. We need not resolve the dispute over the applicable standard.

We reject the residents' argument because the alleged actions of the defendant officials do not shock the conscience under either standard. There is no showing of malicious or sadistic intent to harm, and what was not "egregious" conduct in *Karsjens*, 845 F.3d at 411, is not "patently egregious" deliberate indifference here. The director's alleged failure to authorize petitions for release does not amount to conscience-shocking deliberate indifference to liberty when a resident may petition a court directly for release and trigger the same type of proceeding on whether commitment is still justified. *See* Mo. Rev. Stat. §§ 632.498.2-.5, .501. The nonexistence of less restrictive housing options, the district court explained, stems largely from inadequate funding. Since at least 2010, state officials have "requested money to be placed in the state's budget for establishing cottages in the community, in order to implement the community reintegration phase," but the governor has not

proposed that funding to the state legislature. Those efforts by state officials to secure funding run counter to a conclusion of deliberate indifference by the defendants. *See Cullor v. Baldwin*, 830 F.3d 830, 838-39 (8th Cir. 2016). The district court traced the problem of annual reviewers applying incorrect standards to a lack of legal training. This fault is hardly commendable, but it is insufficient to prove conscience-shocking deliberate indifference to a resident's liberty when the annual review is presented to a state court that is charged with reviewing the matter independently under correct legal standards. As in *Karsjens*, we conclude that the alleged shortcomings in the State's sexually violent offender program do not shock the conscience.

None of this means, of course, that individual residents are precluded from petitioning for release on their own, outside the framework of this class action litigation. The district court, for example, was particularly concerned that aged and infirm residents may no longer pose a risk of committing predatory acts of sexual violence if released. We hold only that the concept of substantive due process does not justify a finding of class-wide liability based on the alleged deficiencies of state officials that were advanced in this action.

B.

The residents also appeal the district court's dismissal of their state-law claims with prejudice. The court concluded that the residents had abandoned these claims, and we conclude that there is no reversible error.

The residents pleaded claims under the Missouri Constitution, but never developed them. The residents last mentioned the state constitution in their memorandum in opposition to the state officials' motion to dismiss, and even there, the references came under headings of "Fourteenth Amendment Substantive Due Process." After the district court issued its initial liability order, the residents moved

-11-

for clarification, but never raised the state-law claims.  The amended liability order denied all prayers for relief except for the claim that the treatment program was "unconstitutional as applied and deprive[d] Plaintiffs and the Treatment Class of their constitutional rights."  The residents had another chance to resurrect the state-law claims when the district court requested supplemental briefing in light of *Karsjens*, but they bypassed that opportunity as well.  On this record, it was not error for the district court to infer the residents had abandoned their state-law claims.  The district court did not abuse its discretion in denying the motion to alter or amend the judgment.

\*   \*   \*

The judgment of the district court is affirmed.

_____